ANN KANE SMITH, CA BAR NO. 72698
JENNIFER L. GOLBERG, CA BAR NO. 198150
MARYTZA J. REYES , CA BAR NO. 218684
THELEN REID BROWN RAYSMAN & STEINER LLP
333 South Hope Street, Suite 2900
Los Angeles, California 90071
Telephone 213.576.8000
Facsimile 213.576.8080

Attorneys for Defendants
ALC-PARTNER, INC.,
RICHARD MORGAN and DENNIS HARPER

WILLIAM J. CARROLL, ESQ., CA BAR NO. 118106
SARAH R. SPEAKMAN, CA BAR NO. 215085
SCHIFF HARDIN LLP
One Market, Spear Street Tower
Thirty-Second Floor
San Francisco, CA 94105
Telephone: 415.901.8754
Facsimile: 415.901.8701

Attorneys for Defendants
AMERICAN LASER CENTERS LLC (formerly known
as ALC ACQUISITION COMPANY LLC) and
AMERICAN LASER CENTERS OF CALIFORNIA LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAY LOVE, MELINDA AHUMADA, PAULA AUSTIN, ASHLEY BRISENO, LISA CASEY, JESSICA BURIA, NATALIE DOLABJIAN, NADIA KAMELI, ASHLEE MOCHAN, CHRISTINE PEDRO, DAYNA RACOW, BEVERLY ALEXANDER, KATHRYN CAMERON, FEY RICHMAN, CYNTHIA RODIER, SANDRA SEWERIN and AMY WILLIAMS, on behalf of themselves and those classes similarly situated,<br><br>                                Plaintiffs,<br><br>v. | Case No.:  CV081221 (EMC)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**<br><br>Date:        May 2, 2008<br>Place:       10:00 a.m.<br>Place:       Courtroom 8<br>Before:      Hon. Charles R. Breyer |

1  ALC PARTNER, INC., dba AMERICAN
   LASER CENTERS; ALC ACQUISITION
2  COMPANY LLC; AMERICAN LASER
   CENTERS OF CALIFORNIA, LLC;
3  RICHARD MORGAN; DENNIS HARPER;
   and DOES 1 through 200, inclusive,

4
                    Defendants.
5

6

7

8          Defendants ALC-Partner, Inc., American Laser Centers LLC (formerly known as ALC

9  Acquisition Company LLC) ("ALC LLC"), American Laser Centers of California LLC ("ALC

10  California"), (collectively, the ALC Entity Defendants"), Richard Morgan and Dennis Harper

11  (collectively, "Defendants") hereby submit their Memorandum of Points and Authorities in

12  Opposition to Plaintiffs' Motion to Remand.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. SUMMARY OF ARGUMENT .................................................................................. 1

II. STATEMENT OF FACTS .................................................................................... 2

III. PROCEDURAL HISTORY..................................................................................... 3

IV. ARGUMENT.............................................................................................................. 4

    A.     Plaintiffs Previously Invoked CAFA Jurisdiction in their Identical Prior Claim ....................................................................................... 4

    B.     Minimal Diversity Exists under CAFA, and Complete Diversity Exists Under 28 U.S.C. §1332(a) But for Dr. Harper's Presence as a "Sham" Defendant.............................................................................. 5

        1.     The ALC Entity Defendants All Are Citizens of Michigan ........................................................................................ 5

        2.     Richard Morgan is a citizen of Michigan............................................. 8

        3.     Harper, a California citizen, is a sham Defendant, without whom there would exist complete diversity under 28 U.S.C. 1332(a) ....................................................... 9

    C.     There are at Least 100 Members of the Putative Class ....................................... 9

    D.     There is At Least $5,000,000 in Controversy.................................................... 10

    E.     None of the Exceptions to CAFA Jurisdiction Apply Here ............................ 12

        1.     The "home state" exception does not apply in this case because all primary defendants are not citizens of the forum state........................................................................................ 12

        2.     The "local controversy" exception to CAFA jurisdiction does not apply in this case under a plain reading of the statute. ...................................................................................... 12

        3.     The "interest of justice" does not direct this Court to remand this case. ........................................................................... 13

    F.     There Is No Basis To Deny Remand Based Solely On a Non-Prejudicial Clerical Error That Was Immediately Corrected ........................... 13

V. CONCLUSION........................................................................................................ 15

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abrego v. Dow Chemical,*
443 F.3d 676 (9th Cir. 2006)..................................................................... 2, 11

*Anderson v. Federated Mut. Ins. Co.,*
Case No. 2000 WL 34228194, at *2 (W.D. Wis. Aug. 15, 2000) ................... 15

*Arellano v. Home Depot U.S.A., Inc.,*
245 F.Supp.2d 1102 (S.D. Cal. 2003) ................................................................. 8

*Boxdorfer v. Daimlerchrysler Corp.,*
396 F.Supp. 2d 946, 2005 WL. 2837554 (C.D. Ill. 2005) ............................. 15

*Boyce v. St. Paul Fire & Marine Ins. Co.,*
1993 U.S. Dist. LEXIS 728, Case No. 92-6525, 1993 WL. 21210
(E.D. Pa. Jan. 28, 1993)................................................................................. 15

*Breitman v. May Company California,*
37 F.3d 562 (9th Cir. 1994)........................................................................... 1, 7

*Brown v. Nationsbank,*
Case No. 96-2630, 1997 WL. 587486 (N.D. Tex. Sept. 11, 1997)................... 15

*Covington v. Indemnity Insurance Co.,*
251 F.2d 930 (5th Cir. 1958)............................................................................ 14

*Dri Mark Products, Inc. v. Meyercord Co.,*
194 F.Supp. 536 (S.D.N.Y. 1961) ................................................................... 14

*Efford v. Milam,*
368 F. Supp. 2d 380 (D.C.Pa.2005) ................................................................. 15

*Employers-Shopmens Local 516 Pension Trust v. Travelers Casualty & Surety Co.,*
2005 WL. 165329 (D. Or. July 6, 2005) ........................................................... 15

*Flores v. Baldwin,*
2002 WL. 1118504 (N.D. Tex. May 28, 2002)................................................. 15

*Ho v. Ikon Office Solutions, Inc.,*
143 F.Supp. 2d 1163 (N.D. Cal. 2001) ....................................................... 1, 7, 8

*Industrial Tectonics, Inc. v. Aero Alloy,*
912 F.2d 1090 (9th Cir. 1990)................................................................. 1, 6, 7, 8

*International Gateway Communs., Inc. v. Commun. Telesystems International, Inc.,*
922 F.Supp. 122 (N.D. Ill. 1996) ................................................................... 15

**TABLE OF AUTHORITIES (cont.)**

Page(s)

**CASES**

*Johnson v. Columbia Properties Anchorage, LP,*
    437 F.3d 894 (9th Cir. 2006)...................................................................................... 5

*Lowdermilk v. United States Bank National Associate,*
    479 F.3d 994 (9th Cir. 2007)...................................................................................... 12

*In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation,*
    399 F.Supp.2d 340 (D.C.N.Y.2005) ...................................................................... 14, 15

*Reynolds v. Bement,*
    36 Cal. 4th 1075 (2005)......................................................................................... 1, 9

*Riehl v. National Mutual Insurance Co.,*
    374 F.2d 739 (7th Cir. 1967)..................................................................................... 14

*Sanchez v. Monumental Life Insurance Co.,*
    102 F.3d 398 (9th Cir. 1996)................................................................................ 2, 10

*St. Paul Mercury Indemnity Co. v. Red Cab Co.,*
    303 U.S. 283, 58 S. Ct. 586, 82 L. Ed. 845 (1938) ........................................... 10

*Tosco Corporation v. Communities for a Better Environment,*
    236 F.3d 495 (9th Cir. 2001)............................................................................ 1, 6, 7, 8

*Woodall v. Insurance Co. of N. America,*
    582 F. Supp. 247 (N.D. Ga. 1984) ........................................................................... 14

*Yellow Transport, Inc. v. Apex Digital, Inc.,*
    406 F.Supp.2d 1213 (D. Kan. 2005) ..................................................................... 2, 14

**STATUTES**

28 U.S.C.
    Section 1332(a) ................................................................................................ 1, 5, 9
    Section 1332(d) ................................................................................................... 1, 4
    Section 1332(d)(4)(A) ............................................................................................ 12
    Section 1332(d)(4)(B) ............................................................................................ 13

**RULES**

Federal Rules of Civil Procedure
    Rule 12(b)(6) .................................................................................................... 4, 9

1

**TABLE OF AUTHORITIES (cont.)**

Page(s)

2

**OTHER AUTHORITIES**

3

14C Charles Alan Wright et al., Federal Practice & Procedure
    Section 3733 ................................................................................................................. 14

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

I.    **SUMMARY OF ARGUMENT**

Plaintiffs' Motion to Remand is completely meritless and should be denied.  Defendants removed this case based upon diversity of citizenship pursuant to 28 U.S.C. §1332(d) and §1332(a).  The Named Plaintiffs previously filed a nearly identical case in the Central District of California, which Plaintiffs' acknowledge was "essentially the 'same' action," [Motion 12:4], in which they acknowledge the existence of CAFA jursidction.  It truly strains credibility for Plaintiffs to argue to the Court that there is no CAFA jurisdiction in this case, when they specifically invoked such jurisdiction in the so-called "same action," recently dismissed.

Defendants can easily establish the "minimal diversity" necessary for CAFA jurisdiction on the basis of Defendant Morgan's Michigan citizenship (which Plaintiffs concede).  28 U.S.C. 1332(d).  In fact, disregarding Defendant Dr. Harper's citizenship, complete diversity exists under 28 U.S.C. 1332(a).  Dr. Harper is a sham defendant, named solely for purposes of attempting to avoid diversity jurisdiction.  There are no claims in the Complaint that can be properly maintained against Dr. Harper as an individual.  *Reynolds v. Bement*, 36 Cal.4th 1075, 1081-82 (2005).

Plaintiffs, however, ask the Court to remand based on the "home state" and "local controversy" exceptions to CAFA, based on their erroneous contention that the entity Defendants are California Citizens.  But here, unlike in the cases cited by Plaintiffs, the "substantial predominance" of Defendants' business activity does <u>not</u> occur in California or in any single state. *Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090 (9th Cir. 1990); *Tosco Corporation v. Communities for a Better Environment*, 236 F.3d 495 (9th Cir. 2001)  Under the properly applied "nerve center" test, the entity Defendants are not citizens of California, but of Michigan.  *See, e.g.*, *Breitman v. May Company California*, 37 F.3d 562, 564 (9th Cir. 1994).; *Ho v. Ikon Office Solutions, Inc.*, 143 F.Supp.2d 1163 (N.D. Cal. 2001).

Plaintiffs also disingenuously contend that Defendants have not "proven" that the requisite $5,000,000 in controversy; yet, their own allegations, upon which reliance is proper, conclusively demonstrate that they have put at least that much in controversy.The standard for amount in controversy is not what Defendants can <u>prove</u>, but rather <u>what the Plaintiffs have put in</u>

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

1  controversy through their allegations. *Sanchez v. Monumental Life Insurance Co.*, 102 F.3d 398,

2  402 (9th Cir. 1996); *Abrego v. Dow Chem.*,443 F.3d 676, 683 (9th Cir. 2006).

3       Plaintiffs also cannot invoke the exceptions to CAFA jurisdiction because they

4  indisputably filed another claim against Defendants within the past three years. The Court should

5  not ignore the plain meaning of the statute when Plaintiffs admit that they have no supporting

6  authority, merely their misguided belief that the "same case" clause should not apply here.

7       Finally, Plaintiffs' argue that the Court should deny jurisdiction over this case because of a

8  clerical error that was immediately fixed. The predominant view among federal courts is that

9  failure to include copies of state court papers is curable, and remand solely on that basis is not

10  warranted. *Yellow Transp., Inc. v. Apex Digital, Inc.*, 406 F.Supp.2d 1213, (D. Kan. 2005)

11  **II.    STATEMENT OF FACTS**

12       Defendant ALC-Partner, Inc. is a corporation organized under the laws of the State of

13  Delaware. [Declaration of Kevin Piecuch filed in support of Defendants' Notice of Removal

14  ("Piecuch Decl.") at ¶2.] Prior to December 1, 2007, Defendant ALC-Partner, Inc. operated

15  clinics in various states nationwide doing business as American Laser Centers. Defendant ALC

16  Acquisition Company LLC (now known as American Laser Centers LLC) purchased the assets of

17  ALC-Partner, Inc. and its related companies, and began operating the clinics effective December

18  1, 2007. ALC-Partner, Inc. still exists, but no longer owns and operates the clinics. [Supplemental

19  Declaration of Kevin Piecuch, filed concurrently herewith ("Piecuch Supp. Decl.") at ¶2.]

20       Defendant American Laser Centers of California LLC is a limited liability company

21  organized under the laws of the State of Delaware. Its sole member is American Laser Centers

22  LLC. [Piecuch Decl. at ¶4.] Defendant American Laser Centers LLC is a limited liability

23  company organized under the laws of the State of Delaware. American Laser Centers LLC's sole

24  member is ALC, HC, a Delaware corporation. ALC, HC, the sole member of American Laser

25  Centers LLC, is a Delaware holding company headquartered in Michigan, which holds the

26  business assets, namely the clinics, that are managed and operated by American Laser Centers

27  LLC. [Piecuch Decl. at ¶3; Piecuch Supp. Decl. at ¶4.]

28

1    American Laser Centers LLC, American Laser Centers of California LLC, and ALC-

2  Partner, Inc. (collectively referred to as the ALC Entity Defendants) all have their respective

3  headquarters located in Farmington Hills, Michigan. [Piecuch Decl. at ¶¶2-4.]  All of the ALC

4  Entity Defendants' officers and directors work in Michigan, and the entities' administrative

5  operations are centered in Michigan. [Piecuch  Supp. Decl. at ¶3.]

6    The operations of the ALC Entity Defendants are widely dispersed throughout the nation.

7  American Laser Centers LLC presently does business in 27 states.  ALC-Partner, Inc. did business

8  in those same 27 states prior to the sale of the business in November 2007.  The American Laser

9  Centers operations are not concentrated in one or just a few states. [Piecuch  Supp. Decl. at ¶5.]

10    There are approximately 216 American Laser Center clinics in the United States at present.

11  Of those, only approximately 48 are located in California.  Thus, American Laser Centers clinics

12  in California make up only approximately 22% of the total clinic operations nationwide.  In 2007,

13  the overall revenue from American Laser Centers clinics in California was only 20% of the overall

14  revenue generated nationwide by American Laser Centers clinics.  [Piecuch  Supp. Decl. at ¶¶6-7.]

15    There are multiple American Laser Centers clinics in many states other than California,

16  including 20 clinics in New York, 17 clinics in Texas, 16 clinics in Michigan, 14 clinics in

17  Florida, and 13 clinics in Illinois.  [Piecuch  Supp. Decl. at ¶8.]

18    The ALC Entity Defendants presently employ approximately 1,609 people.  Of those

19  employees, approximately 500 are located within California. [Piecuch  Supp. Decl. at ¶9.]

20  **III.    PROCEDURAL HISTORY**

21    On July 16, 2007, Plaintiffs Kay Love, Melinda Ahumada, Paula Austin, Ashley Briseno,

22  Jessica Buria, Natalie Dolabjian, Nadia Kameli and Ashlee Mochan, who are all Plaintiffs in the

23  present action, filed a nearly identical lawsuit against Defendant ALC-Partner, Inc. in Central

24  District of California, bearing Case No. CV 07 4588 R(SHx) (referred to herein as "Love I")[1].  In

25  Love I, Plaintiffs asserted claims under California law identical to the ones in the instant case.

26  

27  [1] Defendants have asked the Court to take judicial notice of the Love I case. *See* Defendants'
   Request for Judicial Notice filed in support of its Motion to Transfer Venue.

28

1    ALC-Partner, Inc. filed a Motion to Dismiss under Federal Rule of Civil Procedure

2    ("FRCP") 12(b)(6), prompting the Love I Plaintiffs to file a First Amended Complaint on or about

3    October 1, 2007. Plaintiffs Lisa Casey, Christine Pedro, Beverly Alexander, Kathryn Cameron,

4    Fey Reichman, Cynthia Rodier, Sandra Sewerin, Pamela Strong, and Amy Williams, all of whom

5    are Plaintiffs in instant case, joined Love I by way of the First Amended Complaint. In fact, only

6    1 of the 17 Plaintiffs here – Dayna Racow – was not a named Plaintiff in Love I.

7    ALC-Partner, Inc. and Richard Morgan filed Motions to Dismiss the Love I First Amended

8    Complaint, which the Court granted. On or about January 14, 2007, the Love I Plaintiffs

9    voluntarily dismissed the case. Shortly thereafter, on or about January 25, 2008, 16 of the original

10    19 Love I named Plaintiffs filed the instant case, asserting the identical California claims.

11    **IV.    ARGUMENT**

12    **A.    Plaintiffs Previously Invoked CAFA Jurisdiction in their Identical Prior Claim**

13    Under CAFA, a federal court has "original jurisdiction" over class actions in which: (1)

14    any member of the putative class is a citizen of a state different from that of any defendant

15    ("minimal diversity"), (2) the aggregate number of putative class members is 100 or greater, and

16    (3) the aggregate amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d).

17    Plaintiffs' Complaint and First Amended Complaint in Love I both state "this Court also

18    has original jurisdiction over the state law claims in this action under the Class Action Fairness

19    Act, 28 U.S.C. §1332(d)." [Love I Complaint at ¶2; Love I First Amended Complaint at ¶2

20    (emphasis added).] With respect to Love I, Plaintiffs state in their Motion that it was "*essentially*

21    *the 'same' action*." [Motion 12:4 (emphasis added).] Indeed, there is no significant difference

22    between Love I and this case such that they could reasonably invoke CAFA in Love I, yet deny its

23    applicability here. Their prior pleadings alone demonstrate the specious nature of Plaintiffs'

24    Motion, and they should be estopped from now claiming that there is no jurisdiction under CAFA.

25    Plaintiffs do not acknowledge, let alone attempt to explain, this glaring inconsistency.

26    Defendants anticipate that they may argue that the scope of the Love I case was broader, but at the

27    time the original Love I complaint was filed, there were only California named plaintiffs, and the

28    FLSA claim in that case added nothing additional in the way of remedies they could recover (the

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

1   would not get double recovery under federal and state law theories of failure to pay overtime).

2   Notwithstanding, it is clear that the Court has jurisdiction over the instant case pursuant to CAFA

3   apart from any consideration of the prior jurisdiction admissions in *Love I*.

     **B.**    **<u>Minimal Diversity Exists under CAFA, and Complete Diversity Exists Under</u>**
4               **<u>28 U.S.C. §1332(a) But for Dr. Harper's Presence as a "Sham" Defendant</u>**

5        Defendants can easily establish the "minimal diversity" necessary for CAFA jurisdiction.

6   Minimal diversity exists when any member of the putative class is a citizen of a different state

7   than any defendant. Here, it is undisputed that Plaintiffs all are California residents. [Complaint

8   at ¶4.] As set forth below, all of the Defendants except Dr. Harper, who Defendants contend is a

9   "sham" defendant named solely to defeat complete diversity, are citizens of Michigan.

10  Accordingly, there is at least "minimal" diversity between Defendants (Michigan citizens other

11  than Dr. Harper) and Plaintiffs (California citizens). Indeed, Richard Morgan's Michigan

12  citizenship, which is undisputed, is enough alone to establish minimal diversity under CAFA.

13          **1.**    <u>The ALC Entity Defendants All Are Citizens of Michigan</u>

14       Plaintiffs' contend in their Motion to Remand that the ALC Entity Defendants are

15  California citizens. Ironically, Plaintiffs accuse Defendants of being "unaware" of the prevailing

16  Ninth Circuit test for determining citizenship of entities, while their Motion proceeds to mis-cite

17  and misapply the law on that topic and, as a result, erroneously conclude that the ALC Entity

18  Defendants are California citizens, when, in fact, they each are citizens of Michigan.

19       The ALC Entity Defendants consist of two limited liability companies and one

20  corporation. For purposes of diversity jurisdiction, "a limited liability company (LLC) is a citizen

21  of every state of which its owners/members are citizens." *Johnson v. Columbia Properties*

22  *Anchorage, LP*, 437 F3d 894, 899 (9th Cir. 2006). American Laser Centers LLC is a limited

23  liability company organized under the laws of the State of Delaware. Its sole member is ALC,

24  HC, a corporation organized under the laws of the State of Delaware. [Piecuch Decl. at ¶3.] Thus,

25  ultimately the citizenship of ALC, HC has to be analyzed under the test for corporations for

26  purposes of determining the citizenship of American Laser Centers LLC.

27       American Laser Centers of California LLC is a limited liability company organized under

28  the laws of the State of Delaware. [Piecuch Decl. at ¶4.] Its sole member is American Laser

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

1  Centers LLC (whose sole member is ALC, HC).  Thus, the citizenship analysis of American Laser

2  Centers LLC and American Laser Centers of California LLC is exactly the same, and is

3  determined based on the citizenship of American Laser Centers LLC's sole member, ALC, HC. [2]

4      ALC-Partner, Inc. is incorporated in Delaware with its principle place of business in

5  Michigan. [Piecuch Decl. at ¶2.]  Defendant ALC-Partner, Inc. is a corporation organized under

6  the laws of the State of Delaware.  Prior to December 1, 2007, Defendant ALC-Partner, Inc.

7  operated the American Laser Centers clinics, which were then purchased and presently are

8  operated by the entity now known as American Laser Centers, LLC.  Thus, the "substantial

9  predominance" analysis of the ALC-Partner, Inc. operations is the same analysis as used for the

10 other two entities, as ALC-Partner, Inc. previously owned and operated the same clinics.

11      In their attempt to analyze corporate citizenship, Plaintiffs' incorrectly apply the "place of

12 operations" test from *Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090 (9th Cir. 1990) to

13 these facts.  In that case, the Court adopted a "place of operations test" for determining the

14 citizenship of a corporation and explained that "the principal place of business is the state which

15 contains a substantial predominance of corporate operations." [*Id.* at 1092.]  The employer

16 conducted business in only two states and "a majority of ITI's business takes place in California

17 …" [*Id.* at 1093.]  Indeed, the Court found that defendant's "California plant accounts for more

18 than 61% of [its] fiscal sales … and more than 69% of its operating income." [*Id.* at 1092.]

19      *Industrial Tectonics* was followed by *Tosco Corporation v. Communities for a Better

20 Environment*, 236 F.3d 495 (9th Cir. 2001).  In *Tosco*, a large oil company sued a non-profit

21 environmental group for defamation.  The defendant showed that five of Tosco's eight refineries

22 were in California while no other state had more than one, the California refineries represented

23 over 40 percent of Tosco's refining capacity, two of Tosco's four blending and packaging

24 facilities were in California, and 37 percent of Tosco's retail locations were in California.  Based

25 on those facts, and having virtually no information about Tosco's operations in other specific

26

27 [2] Plaintiffs argue that based on the name "American Laser Centers of California LLC," that entity must be "principally concerned with business operation in California" [Motion p.5].  The name of the business does not impact the proper application of tests for LLC and corporate citizenship.

28

1   states, the Court concluded that "Plaintiff's presence in California significantly outweighs its

2   presence in any other state." *Id.* 236 F.3d at 501-02.

3         The business activity test set forth in *Tosco* is <u>"substantial predominance" - the test is not

4   "a majority" nor even a "predominance."</u> For the ALC Entity Defendants to properly be deemed

5   California citizens under the *Industrial Tectonics* rule, Plaintiffs must be able to demonstrate that

6   ALC, HC and ALC-Partner, Inc., conduct a "substantial predominance" of their activities in this

7   California, which they do not. On the contrary, ALC does business nationwide and it is not

8   substantially predominant in any one state including California. [Piecuch Supp. Decl. at ¶¶5-8.]

9         Here, ALC, HC, the corporate member of American Laser Centers LLC (and, ultimately of

10   American Laser Centers of California) is a holding company incorporated in Delaware and

11   headquartered in Michigan. ALC, HC holds the business assets, namely the American Laser

12   Centers clinics, that are managed and operated by American Laser Centers LLC. Those operations

13   are widely dispersed, with clinics located in <u>27 different states</u>. The ALC operations are not

14   concentrated in one or just a few states. Indeed, American Laser Centers clinics in California

15   make up only approximately 22% of the total clinic operations, and only 20% of the total

16   nationwide revenue. There are other states where American Laser Centers does substantial

17   business, including New York (20 clinics), Texas (17 clinics), Michigan (16 clinics), Florida (14)

18   clinics, and Illinois (13 clinics). [Piecuch Supp. Decl. at ¶¶4-8.]

19         Where, as here, a corporation's operations are spread among many states, the courts in this

20   Circuit consistently have concluded that no state is dominant and the principal place of business is

21   determined by the "nerve center test," *i.e.*, where the corporation's executive and administrative

22   functions are performed. *See, e.g., Breitman v. May Company California*, 37 F.3d 562, 564 (9th

23   Cir. 1994) (company operated in 30 states and "because no one state contains a substantial

24   predominance of the corporation's business activities, the place of operations test is

25   inappropriate"). Similarly, in *Ho v. Ikon Office Solutions, Inc.*, 143 F.Supp.2d 1163 (N.D. Cal.

26   2001), the court found that Ikon did business in all 50 states and had employees in all of those

27   states, but it had more employees and did more business in California than in any other individual

28   state. Nonetheless, the court recognized California's size and concluded: "Where, as here, the

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

1   percentage of the corporation's activities in each of many states is so modest, it is especially

2   important for the court to take into account the distorting effect (on the numbers that reflect

3   activity in the many states) of the forum state's size." *Id.*, 143 F.Supp.2d at 1168.

4        A similar conclusion was reached by the district court in *Arellano v. Home Depot U.S.A.,*

5   *Inc.*, 245 F.Supp.2d 1102 (S.D. Cal. 2003). There, the court followed both *Industrial Tectonics*

6   and *Tosco*, stating that the "place of operations" test is appropriate only where a corporation

7   conducts substantially all of its operations in a particular state or the amount of business activity in

8   one state is "significantly larger" than in any other state. *Id.*, 245 F.Supp.2d at 1105. In *Arellano,*

9   the evidence revealed that Home Depot did business in 49 states, with 15.1% of its workforce in

10  California and only 9.3% in Florida, the next largest state. While California had the largest

11  number of employees and retail stores, "the margin of difference is not significant enough for a

12  corporation that conducts business in forty-nine of the fifty states." *Id.* at 1107. Finally, the

13  *Arellano* court recognized that California was the most populous state in the nation, and that "the

14  distorting effect of [California's] size must be taken into consideration." *Id.* (Emphasis added.)

15       This case is directly analogous to *Ho* and *Arellano*. There simply is no evidence here in

16  that the nerve center of any of the ALC Entity Defendants is in California. Indeed, all of the ALC

17  Entity Defendants' officers and executives work in Michigan, the corporate headquarters of each

18  of the entities is in Michigan, and the entities' administrative operations are centered in Michigan.

19  [Piecuch Supp. Decl. at ¶3.] Obviously California is one of the largest states geographically and is

20  the most populous state in the country. Thus, it is hardly surprising that a nationwide company

21  doing business in California might have a larger presence here than in other states. But even

22  considering California's relative size, it still accounts for only 22% of the clinic operations and

23  only 20% of the nationwide revenue. [Piecuch Supp. Decl. at ¶7.]

24       In short, there is no evidence that any of the ALC Entity Defendants should be considered

25  a California citizen for purposes of diversity jurisdiction.

26              2.    Richard Morgan is a citizen of Michigan.

27       Plaintiffs concede in their Complaint and in their Motion that Morgan is a citizen of

28  Michigan [Complaint at ¶40; Motion p. 5], and nowhere do Plaintiffs attempt to argue that Morgan

1   is a California citizen.  Thus, Morgan's citizenship is not in dispute.  Yet, although they do not

2   dispute his Michigan citizenship, Plaintiffs assert that Defendants have not "proven" his

3   citizenship because they cite only to the Complaint, which they state is not "evidence."  [Motion

4   6:13-16.]  This argument is ludicrous.  If Plaintiffs allege a fact in their Complaint and Defendants

5   do not dispute it, then the matter undisputed for these purposes.  There is no authority requiring

6   Defendants to submit formal "evidence" of a matter that Plaintiffs' concede in their Complaint.

7           3.    <u>Harper, a California citizen, is a sham Defendant, without whom there<br>would exist complete diversity under 28 U.S.C. 1332(a)</u>

8           As set forth in Defendants' Removal papers, Dr. Harper is nothing more than a "sham"

9   defendant, who Plaintiffs named in this case for the sole purpose of attempting to defeat diversity

10  jurisdiction.  Plaintiffs did not brief the issue or otherwise respond to that allegation in their

11  Motion to Remand.  But Plaintiffs concede in their Motion that, at minimum, Dr. Harper is not a

12  "primary" defendant, and also concede that Dr. Harper is not a " 'real' or 'dominant' target – the

13  deep pockets from whom relief is actually available." [Motion 10:1-3, 6-8.]  Their concessions

14  beg the question as to what purpose Dr. Harper serves as a Defendant in this case.  Notably,

15  Plaintiffs did not name Dr. Harper in the Love I action which they filed in federal court, although

16  his existence was known to them.  Obviously, Plaintiffs had no reason to name Dr. Harper in Love

17  I where they conceded federal jurisdiction, whereas in this case they wanted a California citizen to

18  defeat complete diversity.  That is the sole reason why Dr. Harper is named in this case.

19          Defendants have filed a Motion to Dismiss under FRCP 12(b)(6) in which they ask the

20  Court, among other things, to dismiss Dr. Harper as an individual defendant because he cannot be

21  held personally liable for ALC Entity Defendants' alleged wage and hour violations per *Reynolds*

22  *v. Bement*, 36 Cal.4th 1075, 1081-82 (2005).  There are absolutely no allegations in the Complaint

23  to support any theory of liability against Harper.  He should be dismissed from this case or, at

24  minimum, his citizenship disregarded for jurisdiction analysis.  Indeed, <u>without Dr. Harper in the</u>

25  <u>case, there would be complete diversity under 28 U.S.C. §1332(a).</u>

26      **C.    There are at Least 100 Members of the Putative Class**

27          The second CAFA element – more than 100 persons in the putative class – is easily

28  established.  Plaintiffs concede in their Complaint that Defendants "have or will employ" at least

1    100 persons who satisfy the class definition. [Complaint at 52.] Indeed, Defendants employ or

2    have employed at least 500 people in California, most of whom worked in the position for which

3    Plaintiffs seek to certify classes. [Piecuch Supp. Decl. at ¶9.]

4    **D.    There is At Least $5,000,000 in Controversy**

5    In Love I, Plaintiffs' stated in their Complaint that "the claims of the proposed class

6    members exceed $5,000,000 in the aggregate." [Love I Complaint at ¶2.] Of course, Plaintiffs'

7    concede in their Motion that Love I and the instant case are "essentially the 'same' case." [Motion

8    12:4.] Thus, by their own admission, there is no meaningful difference between Love I and this

9    case such that would somehow change the amount Plaintiffs have put into controversy. Again,

10   Plaintiffs' may attempt to argue, although they did not do so in their Motion, that the scope of the

11   Love I case was broader, accounting for their abrupt change in position. But even if the Court

12   ignores their prior admissions, it remains clear that there is CAFA jurisdiction over this action.

13   It is critical to note that <u>Plaintiffs never argue that there is not $5,000,000 in controversy in

14   this case</u>. Rather, they insist, without valid authority, that Defendants have the burden to "prove"

15   the amount in controversy beyond Plaintiffs' allegations. This argument is true gamesmanship by

16   Plaintiffs. They do not dispute or withdraw any of their allegations in the Complaint, and those

17   allegations demonstrate without question that Plaintiffs' have put more than $5,000,000 in

18   controversy in this case. Defendants are not required to "prove" at this stage what amounts of

19   overtime Plaintiffs allegedly worked for which they seek to recover, and indeed, Defendants

20   dispute that Plaintiffs' were working large amounts of overtime and that they were eligible for

21   overtime pay. The standard for amount in controversy is not what Defendants can <u>prove</u>, but

22   rather <u>what the Plaintiffs have put in controversy through their allegations.</u>   "If the complaint filed

23   in state court alleges damages in excess of the required federal jurisdictional amount, remand is

24   warranted only if it appears to a "legal certainty" that the claim is actually for less than the

25   jurisdictional minimum. *Sanchez v. Monumental Life Insurance Co.*, 102 F.3d 398, 402 (9th Cir.

26   1996); *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89, 58 S. Ct. 586, 82 L.

27   Ed. 845 (1938) ("the sum claimed by the plaintiff controls if the claim is apparently made in good

28

1   faith" and "it must appear to a legal certainty that the claim is really for less than the jurisdictional

2   amount to justify dismissal"). *Accord, Abrego v. Dow Chem.*, 443 F.3d 676, 683 (9th Cir. 2006).

3         It is abundantly clear from Plaintiffs' allegations, which they do not withdraw or dispute,

4   that the amounts they are seeking from Defendants exceed the $5,000,000 amount in controversy

5   requirement.  Just focusing on the overtime claims, and leaving aside the numerous other claims

6   for which Plaintiffs seek compensation and penalties), Plaintiffs have asserted the following:

7   • <u>Clinic Managers</u>: Plaintiff alleged that Clinic Managers earned an average of
       $50,000 per year exclusive of non-discretionary bonuses, and worked an average of
8       25 overtime hours per week. [Complaint at ¶65.]  Thus, each Plaintiff and putative
        class member clinic manager purports to claim an average of 1250 hours of
9       overtime for each full year worked (assuming 50 weeks worked per year x 25 hours
        per week of unpaid overtime claimed).  Based on the $50,000 salary amount
10      claimed by Plaintiffs, the hourly rate for overtime for the clinic managers would be
        approximately $36.05 per hour.  <u>That equates to $45,062.50 per year per Clinic
11      Manager</u>.  There are 48 clinics presently operating in California.  Even assuming
        that only 48 Clinic Managers have ever worked for Defendants in California (a
12      figure that is clearly too low, given turnover), <u>the amount sought for one year is
        approximately $2,163,000</u>.  Plaintiffs' are seeking overtime for a four-year
13      statutory period.  Clearly, the Clinic Managers alone have put more than
        $5,000,000 in controversy, as the overtime amounts they allege and are seeking
14      would total that amount for less than the statutory period.

15  • Similarly, the <u>Assistant Managers</u> seek to recover overtime, claiming that they
        earned an average of $35,000 per year exclusive of non-discretionary bonuses, and
16      worked an average of 15 overtime hours per week. [Complaint at ¶65.]  Thus, each
        Plaintiff and putative class member assistant manager purports to claim an average
17      of 750 hours of overtime for each full year worked (assuming 50 weeks worked per
        year x 15 hours per week of unpaid overtime claimed).  Based on the $35,000
18      salary amount claimed by Plaintiffs, the hourly rate for overtime for the assistant
        managers would be approximately $25.24 per hour, and the overtime amount per
19      class member for just one year would be $18,930.00.  If each California clinic had
        just one assistant manager ultimately join the class, the overtime pay they are
20      seeking to recover for <u>just one year</u> is approximately $908,000.

21  • For <u>technicians</u>, Plaintiffs seek Plaintiffs seek overtime wages based on alleged
        earnings of $30 per hour and average overtime worked of 5 hours per week.
22      [Complaint at ¶66.]  Thus, Plaintiffs seek to recover an average of 250 hours of
        overtime for each full year worked by a technician (assuming 50 weeks worked per
23      year x 5 hours per week of unpaid overtime claimed).  Based on the $30 per hour
        rate, the hourly rate for overtime would be approximately $45.00 per hour, so one
24      year of overtime, assuming 5 hours per week, would be <u>$11,250 per technician</u>.
        Defendants presently employ approximately 500 employees in California, a large
25      portion of whom are technicians, nurses and aestheticians.  Even if only 100
        employees in that job category ultimately joined the class, <u>just one year of overtime
26      for such putative class members would equate to $1,125,000.00</u>.

27        That is just a brief analysis of the overtime pay sought in this case, which more than

28  satisfies the jurisdictional amount in controversy on its own.  Plaintiffs also seek damages and

1   penalties for numerous other alleged Labor Code violations such as missed meal and rest breaks,

2   "off the clock" pay, failure to pay reimbursements, and failure to pay accrued vacation.

3          Plaintiffs citation to *Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 1003

4   (9th Cir. 2007) is utterly unpersuasive.  In *Lowdermilk* the defendant asserted for removal

5   purposes that more than $5,000,000 was at issue simply by making blanket assumptions that were

6   not set forth in the Complaint or supported by any other evidence submitted. *Id.* at 1001.

7   Defendants have done no such thing.  Rather, Defendants rely on the specific allegations in

8   Plaintiffs' Complaint, which they do not dispute.  In *Lowdermilk*, the court thought it critical that

9   "Plaintiff's counsel repeatedly stated at oral argument that the sum total of damages plaintiffs are

10  currently seeking--including attorneys' fees and costs-does not exceed $ 5,000,000. Plaintiff might

11  reasonably have claimed more, but absent evidence of bad faith, we are obliged to honor that

12  representation." *Id.* Here, Plaintiffs have never claimed that there was less than $5,000,000 in

13  controversy, and, most tellingly, they do not even make that argument in their Motion.

14         **E.     None of the Exceptions to CAFA Jurisdiction Apply Here**

15                  1.     The "home state" exception does not apply in this case because all primary
                           defendants are not citizens of the forum state.

16         Under the "Home State" exception to CAFA jurisdiction, a federal court must decline

17  jurisdiction over a class action in which two-thirds or more of the putative class members and all

18  of the "primary defendants" are citizens of the State in which the action was initially filed. See 28

19  U.S.C. § 1332(d)(4)(B).  Plaintiffs argue that the "primary defendants" are the ALC Entity

20  Defendants.  Even if their "primary defendant" definition was supportable, Defendants have

21  shown herein that the ALC Entity Defendants are citizens of Michigan, not California.  Indeed,

22  there is no evidence to demonstrate that any of the ALC Entity Defendants, let alone all of them,

23  are California citizens.  Thus, the "home state" exception to CAFA jurisdiction is inapplicable.

24                  2.     The "local controversy" exception to CAFA jurisdiction does not apply in
                           this case under a plain reading of the statute.

25

26         Under this "local controversy" exception, there is no jurisdiction under CAFA where

27  (a) more than two-thirds of the putative class members are citizens of the forum state, (b) at least

28  one of the defendants is a citizen of the forum State, (c) "significant relief" is sought from the

1    local defendant whose alleged conduct forms a "significant basis" for Plaintiff's claims, and (d) <u>no</u>

2    <u>other class action has been filed within the past 3 years on behalf of the same persons against any</u>

3    <u>defendant asserting the same or similar factual allegations.</u>  28 U.S.C. § 1332(d)(4)(A).

4         This exception, like the "home state" exception, is inapplicable because Plaintiffs cannot

5    show that any Defendant other Dr. Harper is a citizen of California.  Even if Dr. Harper were not

6    considered a sham Defendant, there is no valid argument that "significant relief" is being sought

7    against him (in fact, Plaintiffs so admit in their Motion).  But an even more glaring problem for

8    Plaintiffs is their prior filing of the Love I case, <u>which renders this exception inapplicable</u>.

9    Plaintiffs assert nothing other than their their hope or belief that the legislature "must not have"

10   intended for that provision to apply to circumstances where the supposed "same case" was refiled

11   against defendants.  <u>They admit they have no authority for their position</u>.  [Motion pp.11-12.]

12        Plaintiffs' postion is totally disingenuous.  If the Court accepts the premise that this is

13   indeed the "same case," as Love I (despite their attempt to forum shop the case to state court in a

14   different federal judicial district), then Plaintiffs should be bound by their prior admission that

15   CAFA jurisdiction applies to the instant fact.

16             3.    <u>The "interest of justice" does not direct this Court to remand this case.</u>

17        This discretionary exception also does not apply, as it also requires consideration of the

18   previously-filed action, and would require Plaintiffs to show, among other things, that at least two

19   of the five Defendants were California citizens, which they cannot do.

20   **F.    There Is No Basis To Deny Remand Based Solely On a Non-Prejudicial
21          Clerical Error That Was Immediately Corrected**

22        In the absence of any valid substantive argument in favor of remand, Plaintiffs argue that

23   the case should be remanded due to a clerical error (namely that a copy of the state court

24   Complaint, although referenced in Defendants' Notice of Removal, was initially omitted from the

25   exhibits).  This error was discovered when the court copies were returned the following business

26   day, and Defendants immediately corrected it by filing a Notice of Errata, filing a hard copy of the

27   Complaint directly with the Court (the Notice of Removal, as an initial filing, had been filed

28

LA #610514 v6

13

1   directly with the Court rather than electronically filed), and electronically filing the Notice of

2   Errata. [Declaration of Jennifer L. Goldberg at ¶¶2-3.] Plaintiffs were in no way prejudiced.

3       The predominant view among federal courts on this issue is that the removing party's

4   failure to file the required state court papers is "curable in the federal courts if there is a motion to

5   remand." *Yellow Transp., Inc. v. Apex Digital, Inc.*, 406 F.Supp.2d 1213, 1215 (D. Kan. 2005);

6   14C Charles Alan Wright et al., Federal Practice & Procedure § 3733.  The requirement that a

7   removing party attach all state court papers "does not go to the attempt to invoke federal court

8   jurisdiction." *Yellow Transp., Inc. v. Apex Digital, Inc., supra*, 406 F. Supp. 2d at 1217.  In

9   refusing to remand on the basis of a clerical error (that had been cured), the court in the on-point

10  *Yellow Transport* case reasoned:

11          This court can see no valid reason for remanding this case solely because the
            defendant failed to attach the summons to the notice of removal. The failure was
12          inadvertent and trivial . . . did not unduly burden the court or reflect the complete
            failure to follow the removal procedure that typically leads to remand orders
13          where the motion is made outside the thirty-day window or where all defendants
            do not join. Important, also, is the fact that plaintiff has suffered absolutely no
14          prejudice whatsoever from the defect and this defect can be promptly and easily
            remedied by allowing defendant to file its proposed amended notice of removal.
15

16  *Id.* at 1219.

17      Following the same line of reasoning, a large number of federal courts have addressed this

18  issue, with the overwhelming consensus that a case should not be remanded due to an inadvertent

19  error that was subsequently corrected and caused no prejudice to the plaintiff.  *See, e.g., Covington*

20  *v. Indemnity Insurance Co.*, 251 F.2d 930, 932-33 (5th Cir. 1958) (rejecting the argument that

21  there was no jurisdiction because the removal papers did not include the state court papers, and

22  holding that "mere modal or procedural defects [in removal] are not jurisdictional"); *Dri Mark*

23  *Prods, Inc. v. Meyercord Co.*, 194 F.Supp. 536, 538 (S.D.N.Y. 1961) (noting that defect was

24  already cured where defendant filed the required exhibits along with its opposition to the motion

25  to remand); *Riehl v. National Mutual Insurance Co.*, 374 F.2d 739 (7th Cir. 1967) (rejecting the

26  argument that it did not acquire jurisdiction over the case because the state court complaint was

27  not filed with the federal court); *Woodall v. Ins. Co. of N. Am.*, 582 F. Supp. 247, 248 (N.D. Ga.

28  1984) (allowing amendment of notice of removal in order to attach copies of state court papers); *In*

1  *re: Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 399 F.Supp.2d 340

2  (D.C.N.Y.2005) (defendant's failure to file state court record papers was curable and did not

3  defeat the court's jurisdiction); *Efford v. Milam*, 368 F.Supp.2d 380 (D.C.Pa.2005) (remanding on

4  other grounds, and holding that defendant's failure to file all state court papers with the notice of

5  removal was a formal defect that was remedied and that did not require remand) *Int'l Gateway*

6  *Communs., Inc. v. Commun. Telesystems Int'l, Inc.*, 922 F. Supp. 122, 124 (N.D. Ill. 1996)

7  (granting leave to amend notice of removal to add a copy of the summons where the plaintiff was

8  not prejudiced by the defect and it was curable).[3]

9       Plaintiffs' authority is limited and certainly does not represent the majority view of the

10  federal courts.  For example, the unpublished Oregon decision they cite pointedly <u>does not</u> order

11  remand on the basis of the procedural defect.  *Employers-Shopmens Local 516 Pension Trust v.*

12  *Travelers Cas. & Surety Co.*, 2005 WL 165329 (D. Or. July 6, 2005).  Notably, they do not

13  attempt to distinguish the large body of law directly contradicting their argument.

14  **V.    CONCLUSION**

15       For the foregoing reasons, Defendants respectfully submits that removal was proper and

16  this motion for remand should be denied.

17  Dated: April 11, 2008                    THELEN REID BROWN RAYSMAN &
                                             STEINER LLP
18
                                             By  /s/ Jennifer L. Goldberg
19                                               Attorneys for Defendants
                                                 ALC-PARTNER, INC., RICHARD
20                                               MORGAN and DENNIS HARPER

21

22  _____
     [3] *Accord, Boxdorfer v. Daimlerchrysler Corp.*, 396 F. Supp. 2d 946, 2005 WL 2837554, at *2
23  (C.D. Ill. 2005) (declining to remand due to procedural defect in failing to attach the required
     documents to the notice of removal and allowing substitution to add additional documents);
24  *Anderson v. Federated Mut. Ins. Co.*, Case No. 2000 WL 34228194, at *2 (W.D. Wis. Aug. 15,
     2000) (failure to attach the correct state court papers was a curable defect rather than a substantive
25  error; declining to remand); *Flores v. Baldwin*, 2002 WL 1118504, at *4 (N.D. Tex. May 28,
     2002) (remand was not required because the other party was not prejudiced and the record could
26  easily be supplemented); *Brown v. Nationsbank*, Case No. 96-2630, 1997 WL 587486, at *2 (N.D.
     Tex. Sept. 11, 1997) (allowing party to cure the defect); *Boyce v. St. Paul Fire & Marine Ins. Co.*,
27  1993 U.S. Dist. LEXIS 728, Case No. 92-6525, 1993 WL 21210, at *3 (E.D. Pa. Jan. 28, 1993)
     (procedural defect was remedied when the court received a copy of the state court records);

28

1   Dated:  April 11, 2008

SCHIFF HARDIN LLP

2   By

William J. Carroll
3   Attorneys for Defendants
AMERICAN LASER CENTERS LLC and
4   AMERICAN LASER CENTERS OF
CALIFORNIA LLC
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA #610514 v6

16