1  LIONEL Z. GLANCY (SBN 134180)
   lglancy@glancylaw.com
2  KEVIN F. RUF (SBN 136901)
   kevinruf@yahoo.com
3  KARA M. WOLKE (SBN 241521)
   kwolke@glancylaw.com
4  GLANCY BINKOW & GOLDBERG LLP
5  1801 Avenue of the Stars, Suite 311
   Los Angeles, California 90067
6  Telephone:   (310) 201-9150
   Facsimile:   (310) 201-9160
7  Email: info@glancylaw.com
8
9  *Attorneys for Plaintiffs and Proposed Plaintiff Classes*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAY LOVE, MELINDA AHUMADA, PAULA AUSTIN, ASHLEY BRISENO, LISA CASEY, JESSICA BURIA, NATALIE DOLABJIAN, NADIA KAMELI, ASHLEE MOCHAN, CHRISTINE PEDRO, DAYNA RACOW, BEVERLY ALEXANDER, KATHRYN CAMERON, FEY REICHMAN, CYNTHIA RODIER, SANDRA SEWERIN, and AMY WILLIAMS, on behalf of themselves and those classes similarly situated,<br><br>       Plaintiffs,<br><br> v.<br><br>ALC PARTNER, INC., dba AMERICAN LASER CENTERS; ALC ACQUISITION COMPANY LLC; AMERICAN LASER CENTERS OF CALIFORNIA, LLC; RICHARD MORGAN; DENNIS HARPER; and DOES 1 through 200, inclusive,<br><br>       Defendants. | Case No. CV-08-1221-CRB<br><br>**REPLY BRIEF IN SUPPORT OF MOTION TO REMAND, OR ALTERNATIVELY FOR LIMITED JURISDICTIONAL DISCOVERY**<br><br>Date:  May 2, 2008<br>Time:  10:00 a.m.<br>Place:  Courtroom 8<br>Before: Hon. Charles R. Breyer<br><br>Complaint Filed:    January 25, 2008<br>Notice of Removal:  February 29, 2008 |

# **TABLE OF CONTENTS**

I.   Summary of Argument on Reply . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  Remand Is Mandatory Under The Home Controversy Exception To CAFA. . . . . . . . . . 1

       A.   Defendants' Analysis Confuses "Majority" with "Substantial Predominance." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       B.   Defendants Fail Again to Produce Any Evidence Showing Their "Place of Operations." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       C.   California Contains a Substantial Predominance of Defendants' Business Activities, Including Nearly One-Third of Defendants' Employees. . . . . . 5

       D.   Defendants' Reliance on *Ho* and *Arellano* Is Misplaced. . . . . . . . . . . . . . 6

       E.   Defendants Misstate Centralization of the "Nerve Center" in Michigan. . . 7

       F.   Well-Established Public Policies Favor Remand in This Case. . . . . . . . . 8

III. Removal Is Further Mandated By Defendants' Failure To Comply With The Plain Language Of The Removal Statute. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.  Defendants Fail Their Burden Of Proof On The Requirements Of CAFA Or Diversity Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       A.   Harper or No Harper, There Is No Absolute Diversity in This Case.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       B.   Defendants' Extrapolations of the Amount in Controversy Are Flawed.  13

V.   Alternatively, Court May Remand "In The Interest Of Justice." . . . . . . . . . . . . . . . . . . 14

VI.  Plaintiff's Invocation Of CAFA Jurisdiction In A Previously-Filed Nationwide Class Action Does Not Constitute A "Judicial Admission" That CAFA Jurisdiction Applies To This California State Only Class Action, Or Give Rise To "Judicial Estoppel." . . . . . . 14

VII. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

CASES

*Abrego Abrego v. The Dow Chemical Co.*,
   443 F.3d 676 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Arellano v. Home Depot U.S.A., Inc.*,
   245 F.Supp.2d 1102 (S.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Breitman v. May Company California*,
   37 F.3d 562 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Burgos v. United Airlines, Inc.*,
   2002 WL 102607 (N.D. Cal. January 11, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4-6

*Durand v. The Hartford Life & Accident Ins. Co.*,
   2007 WL 1395336 (D. Colo. May 9, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

*Employers-Shopmens Local 516 Pension Trust v. Travelers Cas. & Surety Co. of Am.*,
   2005 WL 1653629 (D. Or. July 6, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ghaderi v. United Airlines, Inc.*,
   136 F.Supp.2d 1041 (N.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6, 8

*Ho v. Ikon Office Solutions, Inc.*,
   143 F.Supp.2d 1163 (N.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Industrial Tectonics, Inc. v. Aero Alloy*,
   912 F.2d 1090 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

*Kisor v. Collins*,
   338 F.Supp.2d 1279 (N.D. Ala. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 11

*Lao v. Wickes Furniture Co.*,
   455 F.Supp.2d 1025 (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 14

*Ortiz v. Menu Foods, Inc.*,
   525 F.Supp.2d 1220 (D. Haw. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Reynolds v. Bement*,
   36 Cal. 4th 1075 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Tosco Corp. v. Communities for a Better Env't*,
   236 F.3d 495 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United Steelworkers of America v. Retirement Income Plan for Hourly-Rated Employees of Asarco, Inc.*,
   512 F.3d 555 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Yellow Transportation, Inc. v. Apex Digital, Inc.*,
   406 F.Supp.2d 1213 (D. Kan. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

STATUTES & RULES

28 U.S.C § 1446(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9, 11

28 U.S.C § 1447(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9, 10

28 U.S.C. § 1332(d)(4)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13, 14

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**I.      Summary of Argument on Reply**

Remand is mandatory under the home controversy exception to CAFA since the ALC Corporate Defendants are citizens of California under the "place of operations" test. (*See* section II, *infra.*) On the one hand, Defendants fail to prove that California does ***not*** contain a substantial predominance of their business activities; on the other, it is undisputed that: (1) approximately ***31%*** of the ALC Corporate Defendants' employees are located in California; (2) California contains ***more than twice*** as many clinic operations as any other single state; and (3) California clinics make up approximately ***20%*** of total nationwide revenue. *See Burgos v. United Airlines, Inc.*, 2002 WL 102607 (N.D. Cal. January 11, 2002); *Ghaderi v. United Airlines, Inc.*, 136 F.Supp.2d 1041 (N.D. Cal. 2001). That the ALC Corporate Defendants are California citizens destroys complete diversity as well.

In addition, remand is further mandated by Defendants' failure to comply with 28 U.S.C § 1446(a) within the required 30-day period. *See Durand v. The Hartford Life & Accident Ins. Co.*, 2007 WL 1395336 (D. Colo. May 9, 2007). Defendants' defective removal would not only render the plain language of the statute meaningless, but it would also invalidate 28 U.S.C § 1447(c), which was specifically amended by Congress in 1988 in contemplation of such procedural challenges. *See Kisor v. Collins*, 338 F.Supp.2d 1279, 1281 (N.D. Ala. 2004).

Although these points are dispositive in favor of remand, Plaintiffs show that Defendants have otherwise failed to meet the requirements of CAFA or diversity jurisdiction. Plaintiffs show that the Court would also be justified in ordering remand "in the interest of justice." Finally, whereas Defendants' argue that Plaintiffs have already "admitted" CAFA jurisdiction and are "estopped" from asserting otherwise, Plaintiffs show that this is a diversionary tactic designed to deflect attention from their own substantive and procedural failures.

**II.     Remand Is Mandatory Under The Home Controversy Exception To CAFA.**

The Class Action Fairness Act ("CAFA") requires courts to decline jurisdiction if two-thirds or more of the members of all the plaintiff class and the "primary" defendants are citizens of the original forum state. See 28 U.S.C. § 1332(d)(4)(B). Here, Defendants do not dispute that two-thirds or more of Plaintiffs' proposed class are from California. (*See* Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion to Remand [hereinafter Defs.' Opp."],

1  at 5, *l.*7.) Nor do Defendants dispute that American Laser Centers of California LLC, American Laser Centers LLC, and ALC Partner, Inc. (collectively "the ALC Corporate Defendants") are the "primary" Defendants in this lawsuit for CAFA purposes. (*See id.* at 12, *ll.*19-21.)

Instead, the only dispute between the parties on the applicability of the home controversy exception is whether the ALC Corporate Defendants are citizens of California. Plaintiffs contend that the ALC Corporate Defendants are California citizens under the Ninth Circuit "place of operations" test since California contains a substantial predominance of Defendants' business activities. Defendants contend that the ALC Corporate Defendants are citizens of Michigan under the "nerve center" test, which, as discussed below, is not the proper test in the 9th Circuit under these circumstances. Resolution of this dispute is not only dispositive on the application of the home controversy exception under CAFA, but also dispositive on whether remand is required. If the ALC Corporate Defendants are found to be citizens of California, then the Court would not have jurisdiction over this matter because, at the very least, the home controversy exception to CAFA would apply and any diversity between the parties would be destroyed.

**A.     Defendants' Analysis Confuses "Majority" with "Substantial Predominance."**

Defendants do not and cannot dispute that the "nerve center" test is applied only ***after*** the "place of operations" test is applied, and only after it is determined that no substantial predominance of business activities exist in any one state. *Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1094 (9th Cir. 1990). Defendants' application of the "place of operations" test, however, is deeply flawed. Defendants contend that "[w]here, as here, a corporation's operations are spread among many states, the courts in this Circuit consistently have concluded that no state is dominant and the principal place of business is determined by the 'nerve center test.'" (Defs.' Opp. at 7, *ll.*19-20.) This sentence misstates the law and the cases cited by Defendants. The fact that a company's operations are spread among multiple states does not, *ipso facto*, preclude application of the "place of operations" test. The key determination remains whether any one state contains a substantial predominance of the corporation's business activities vis-à-vis any other single state. *See Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 500 (9th Cir.2001); *accord Breitman v. May Company California*, 37 F.3d 562, 564 (9th Cir. 1994) (refusing to apply place of operations test

1  "because no one state contains a substantial predominance of the corporation's business activities."),
2  cited in Defs.' Opp. at 7, *ll*.22-25.

3        Here, based on Defendants' own admissions, it is clear that the ALC Corporate Defendants'
4  presence in California significantly outweighs its presence in any other state. Defendants admit that
5  approximately ***31%*** of the ALC Corporate Defendants' employees are located in California
6  (approximately 500 out of 1,609 total), and that American Laser Centers clinics in California make
7  up approximately ***22%*** of total clinic operations (48 out of 216 total) and approximately ***20%*** of total
8  nationwide revenue.[1]  (See Defs.' Opp. at 3, *ll*.10-19; Supplemental Declaration of Kevin Piecuch
9  In Support of Removal and in Opposition to Plaintiffs' Motion to Remand [hereinafter "Piecuch
10 Supp. Decl."] at 6-9.) Defendants appear to argue that California does not contain a "substantial
11 predominance" of its business activities because it does not contain a majority of Defendants'
12 business activities - "only" 31% of its employees, "only" 23% of its clinics, and "only" 20% of its
13 revenue nationwide. See Defs.' Opp. at 3, *ll*.10-14; 8, *ll*.22-23; Piecuch Supp. Decl. at 6, 7.) In
14 other words, Defendants mistakenly compare the percentage of their business activities in California
15 to the combined percentage of its business activity in the rest of the United States. *See Tosco*, 236
16 F.3d at 500. However, "`substantial predominance´ does not require the majority of a corporation's
17 total business activity to be located in one state, but instead, requires only that the amount of
18 corporation's business activity in one state be significantly larger than any other state in which the
19 corporation conducts business." *Id*. (emphasis added). As discussed below, this is abundantly true
20 here.

23     **B.**       **Defendants Fail Again to Produce Any Evidence Showing Their "Place of**

---

[1] It is worth noting that these numbers represent a moving target that have shifted relatively in Defendants' favor the longer this litigation has been prolonged. In July 2007, when the original lawsuit was filed, there were only 185 American Laser Centers clinics nationwide, 49 of which were in California (i.e., 26% of total clinics). Indeed, even since the filing of Plaintiffs' Motion to Remand on March 28, 2008, Defendants have apparently closed two clinics in California, added a new clinic in Texas, and opened 2 others, thereby diluting - though not defeating - California's predominance on a percentage-wide basis. This perhaps explains Defendants' procedural delay tactics in the form of multiple extensions to answer, multiple motions to dismiss, and now removal.

**Operations."**

Tellingly, Defendants do not supply any evidence of its employees or revenue in other individual states that would allow comparison with California and a more meaningful application of the "place of operations" test. This unexplained failure - or refusal - of Defendants to produce evidence in their possession that would tend to throw light on these issues ***authorizes an inference unfavorable to them.*** *See* 31A C.J.S. Evidence § 156(2); 29 Am.Jur.2d Evidence § 178. Indeed, the burden is on Defendants, as the party invoking diversity jurisdiction, to establish under the "place of operations" test that California does ***not*** contain a substantial predominance of its business activities. *E.g.*, *Burgos*, 2002 WL 102607, at *2. Furthermore, any doubt must be resolved against them. *Id.*; see also section II.F, *infra* (discussing well-established public policies guiding diversity determinations).

Significantly, this is Defendants' second opportunity - and second straight failure - to produce evidence on the ALC Corporate Defendants "place of operations." Defendants' first opportunity - their removal petition - was ***utterly silent*** on the "place of operations" test even though it is the primary test for determining corporate citizenship in the Ninth Circuit. *See Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1094 (9th Cir. 1990). Instead, Defendants' removal petition was based on a conclusory declaration that Michigan was the ALC Corporate Defendants' "principal place of business." (*See* Plaintiffs' Notice of Motion and Motion to Remand, or, Alternatively, to Conduct Limited Jurisdictional Discovery [hereinafter "Pls.' Remand Mot."] at 5-6, and evidence cited therein.) Now, in opposition to Plaintiffs' remand motion, the only evidence adduced by Defendants' on their "place of operations" *vis-à-vis* California is an enumeration of their clinic numbers in five other states (New York, Texas, Michigan, Florida, and Illinois). (*See* Defs.' Opp. at 7, *ll.*16-18; Piecuch Supp. Decl. at 8.) But this information is readily available on the American Laser Centers website (http://www.americanlaser.com/dsp_map.cfm) and cumulative of evidence already produced by Plaintiffs. Defendants have thus failed again to meet their burden - or even attempt to meet their burden - showing their corporate citizenship. Indeed, Defendants have purposefully omitted information critical to this Court's analysis.

    **C.**    **California Contains a Substantial Predominance of Defendants' Business**

**Activities, Including Nearly One-Third of Defendants' Employees.**

Even based on Defendants' meager showing, it is still obvious that the ALC Corporate Defendants' business activities are significantly larger in California than any other single state. Although Defendants contend that California clinics make up "only" 22% of American Laser Centers total clinic operations, the evidence proffered by Defendants to show that they do "substantial business" in other states comparatively amount to 9% (New York - 20 clinics), 8% (Texas - 17 clinics), 7% (Michigan - 16 clinics), 6% (Florida - 14 clinics), and 6% (Illinois - 13 clinics). (See Defs.' Opp. at 7, *ll.*14-18; Piecuch Supp. Decl. at 6, 8.) That is to say, California contains ***more than twice*** as many clinic operations as any other single state, and ***three times*** the number of operations of Michigan, which is advocated here by Defendants as its principal place of business. Even assuming that Defendants do "substantial business" in five states other than California, the difference in magnitude of activity between California and each of those states need not be very large to be considered "substantial." *See Ghaderi*, 136 F.Supp.2d at 1047. Here, however, it is substantial - more than twice as much. For purposes of substantial predominance, it is not the absolute numeric or percentage difference that matters (e.g., 48 locations versus 20 locations, or 22% versus 9%). "It is the twice as much that counts." *See Burgos*, 2002 WL 102607, at *4.

The fact that California is populous and that many companies choose to do a large portion of their business here (and presumably are also citizens of this state for these purposes) does not change anything. In fact, this is precisely why the California state courts, interpreting California labor laws, should be allowed to litigate this dispute.[2] Along this line, it is clear that the Ninth Circuit "place of operations" test is based on the comparison of absolute percentages of locations,

---

[2] Defendants attempt to downplay the significance of California's "larger presence" by attributing it to the fact that "California is the most populous state in the nation." (*See* Defs.' Opp. at 8, *ll.*19-21). This argument is easily shown to be fallacious by looking at U.S. Census Bureau statistics. According to the U.S. Census Bureau, in 2006, California had a population of 36,457,549 whereas Texas (23,507,783), Florida (18,089,888), and Illinois (12,831,970) had a combined population of 54,429,641. See http://quickfacts.census.gov/qfd/states. Thus, although the combined populations of Texas, Florida, and Illinois is approximately 50% more than California alone (54 million to 36 million), those three states combined still contain almost 10% fewer clinic operations than California (44 total to 48 total).

employees, and revenues among states - not per capita percentages. *See Lao v. Wickes Furniture Co.*, 455 F.Supp.2d 1025, 1063 (C.D. Cal. 2006).

Unfortunately, Defendants do not provide figures for employees and revenue in any state other than California to allow a comparative analysis and fuller application of the "place of operations" test. As already mentioned, this raises a negative presumption against Defendants and any doubt must be resolved against them. Still, the fact that Defendants do business in 27 different states and California has ***more than twice*** as many clinic locations as any other state, employs almost one-third of the ALC Corporate Defendants' total workforce, and accounts for approximately ***20%*** of its total revenue, demonstrates California's "substantial predominance" versus any other single state. *Cf. Ghaderi*, 136 F.Supp.2d at 1047 (finding "substantial predominance" where, inter alia, 31.6% of defendant's workforce was employed in California); *Burgos*, 2002 WL 102607, at *3 (finding "substantial predominance" where, inter alia, 22% of defendant's revenue was generated from California).

**D.    Defendants' Reliance on *Ho* and *Arellano* Is Misplaced.**

The few decisions that have not applied the "place of operations" test have done so in situations where a corporation's activities are "spread relatively ***evenly***" and thinly nationwide. *See Ho v. Ikon Office Solutions, Inc.*, 143 F.Supp.2d 1163, 1166 (N.D. Cal. 2001) (emphasis added). Here, however, as already demonstrated, there is no evidence that the ALC Corporate Defendants' activities are spread "evenly" nationwide - the only evidence shows substantial predominance in California. Furthermore, unlike in *Ho*, in which the defendant did business in ***all 50*** states, Defendants here do business in only ***27*** states, 11 of which contain three or fewer clinic locations. (*See* Declaration of Kevin F. Ruf in Support of Plaintiffs' Motion to Remand [hereinafter "Ruf Decl."] at 2 and Ex. A.)

In *Ho*, the court found no "substantial predominance" since in no state did the defendant's business activity exceed 9% of its overall business. See 143 F.Supp.2d at 1167. This is a far cry from the instant case where no state's clinic operations exceed 9% - except California, which represents 22% of total clinic operations. Furthermore, in *Ho*, only 8.6% of the company's employees were in California, compared to 7.4% in Texas, 4.9% in Pennsylvania, 4.9% in New York, and 4.8% in Florida. See 143 F.Supp.2d at 1165. Again, this is a far cry from the instant case

where California contains approximately **31%** of Defendants' workforce - and Defendants have failed to adduce any evidence on the number of employees in any other state.

Similarly, in *Arellano v. Home Depot U.S.A., Inc.*, 245 F.Supp.2d 1102, 1107 (S.D. Cal. 2003), defendant Home Depot conducted business in 49 states, with 15.1% of its total workforce in California, 9.3% in Florida, 8% in Georgia, 6.9% in New York, and 6.9% in Texas.  Here, unlike in *Arellano*, Defendants conduct business in roughly ***half*** as many states as Home Depot but have ***more than double*** the workforce concentration in California - 31% to 15.1 %.  Also, unlike Home Depot, Defendants here have failed to adduce any evidence on the number of employees in other states, thereby preventing a more meaningful comparison.

In short, *Ho* and *Arellano* are distinguishable on their facts and the analyses performed by those courts are not applicable here.  Far from being spread evenly nationwide, the ALC Corporate Defendants' business activities in California are comparatively "high - between 20-40%," and contain "a relatively large portion of [their] entire business activities."  *See Ho*, 143 F.Supp.2d at 1167; *see also Lao*, 455 F.Supp.2d at 1064 (reserving *Ho* and *Arellano* approaches "for those instances when a company does business relatively evenly and thinly nationwide - meaning in no state did the company's business operations exceed 20% of its total amount of business activity").

**E.  Defendants Misstate Centralization of the "Nerve Center" in Michigan.**

Although the "nerve center" test does not apply here, Defendants are guilty of a false representation when they inform this Court that "***all*** of the ALC Entity Defendants' officers and executives work in Michigan." (*See* Defs.' Opp. at 8, *ll.*16-17 (emphasis added); Piecuch Supp. Decl. at 3 (emphasis added).)  Chelsea Klinke, who is the Western Area Vice President of Operations for American Laser Centers, and is a major force in enforcing its labor policies, actually works and lives in California. (*See* Declaration of Kara M. Wolke in Support of Plaintiffs' Motion to Remand [hereafter Wolke Decl."] at 2, 3.)  Consequently, management activity is hardly non-existent in California, particularly with regard to issues pertaining to California employees (the exclusive focus of this lawsuit, after all).  Indeed, in a recent email to all employees, Ms. Klinke purports to interpret California overtime law and certain new policies purportedly resulting from this lawsuit. (*See* Wolke Decl., Ex. B.)

**F.      Well-Established Public Policies Favor Remand in This Case.**

In resolving the dispute between Plaintiffs and Defendants on the issue of the ALC Corporate Defendants' citizenship, certain well-established policies instruct federal district courts to approach invocations of diversity jurisdiction with caution and to resolve doubts against parties whose only basis for proceeding in federal court is an alleged diversity of citizenship. These policies were enumerated by the *Ghaderi* court as follows:

- Public policy favors allowing state courts to adjudicate state law claims: The diversity statute is to be strictly construed against intruding on the rights of the states to decide their own controversies.

- Public policy favors reducing the federal courts' diversity case load in favor of allowing states to resolve their controversies when it is appropriate to do so: Federal courts are courts of limited jurisdiction. Accordingly, courts should strictly construe the removal statute. There is a presumption against removal and federal courts must reject jurisdiction if there is doubt about the right of removal in the first instance.

- The primary purpose of the diversity statute is to avoid prejudice against "outsiders." Parties who have a great deal of contact with the public in a particular state are not likely to be considered outsiders and, therefore, are not likely to be victims of discrimination by "locals."

- Public policy favors avoiding waste of both litigants' and judicial resources: If the parties were to proceed through trial in this court after an erroneous finding that the court has diversity jurisdiction the resources devoted to the litigation by the parties and the court would have been wasted. The federal judgment would be invalid, and the parties would have to relitigate in state court. In contrast, if the court erroneously remands to state court, a state court will resolve plaintiff's state law claims in a forum in which [defendant] maintains a substantial presence. Little, if any, harm will follow.

136 F.Supp.2d 1043 (alteration added). It follows that it would offend the fundamental principles that drive the development of doctrine in this area to give the term "substantial predominance" a broad definition such that it would be relatively easy for a corporate party to persuade the courts to apply the "nerve center" test. *Id*. at 1047. Accordingly, the Court should decline to resort to the "nerve center" test unless Defendants prove that the difference between the levels of business activity in the states being compared is relatively insignificant. This Defendants have not done, and cannot do.

### III. Removal Is Further Mandated By Defendants' Failure To Comply With The Plain Language Of The Removal Statute.

Defendants attempt to downplay the significance of their failure to comply with 28 U.S.C. § 1446(a) by calling it a "clerical error" - as if it were a typo. (*See* Defs.' Opp. at 13, *ll*.20-23.) Defendant's procedural defect is indeed substantive, however, not trivial. Although buried at the back of their brief, as if it were an afterthought, the fact that 14 of Defendants' 25 cited cases relate to this issue underscore its importance. Indeed, at the time of their removal petition, Defendants' deemed compliance with 28 U.S.C. § 1446(a) so important that they specified the attachment of Plaintiffs' Complaint as one of the grounds for removal:

**In compliance with 28 U.S.C. § 1446(a), Defendants assert the following grounds for removal:**

. . .

**2. True and correct copies of Plaintiffs' Complaint, along with papers which accompanied the Complaint, are attached as Exhibit A hereto.**

(*See* Defendants' Notice of Removal of Civil Action [hereinafter "Defs.' Removal"] at 2, *ll*.14-25 (emphasis added).) It further strains common sense to believe that this mere "clerical error" would be "immediately corrected" - as it was (Defs.' Opp. at 13, *l*.26) - if it were not critical to the invocation of this Court's jurisdiction. Significantly, Defendants' attempted correction of their removal petition *came after* the 30-day period for removal had expired, which Defendants do not dispute. No one forced Defendants to wait until the "eleventh hour" to file their removal petition (with handwritten page numbers on some pages to boot). Yet, having been removed on the last possible day and without fulfillment of all procedural requirements - and Plaintiffs having moved to remand within the 30 day window for a procedural defect - the case should be remanded.

Defendants' argument would not only render meaningless the plain language of 28 U.S.C. § 1446(a), but would also invalidate the plain language of 28 U.S.C. § 1447(c), under which Plaintiffs challenge Defendants' procedural defect. In 1988, Congress amended section 1447(c) and specifically imposed a 30-day limit on the time a plaintiff has to move the federal court to remand a case after it has been removed from a state court *if the basis for the remand motion is a defect in the procedure used in the removal process.* *See* Pub.L. 100-702 (Judicial Improvements and Access

to Justice Act of 1988); 28 U.S.C. § 1447(c). As one district court observed:

> Did Congress mean something when in 28 U.S.C. § 1447(c) it expressly distinguished between subject-matter jurisdiction, which cannot be waived, and a procedural defect, which is waived only if not made the subject of a motion to remand within thirty (30) days after the notice of removal? If Congress did not mean what it said, then 28 U.S.C. § 1447(c) is nothing more than a vehicle by which an unhappy plaintiff, who selected a presumptively competent state forum, can, at his option, warn the removing defendant who has woefully failed to dot his procedural i's and cross his procedural t's, to amend post hoc and post haste, so as to make everybody but the plaintiff happy. This court, sitting as a court of limited jurisdiction, cannot ignore a manifest procedural defect that a plaintiff has expressly complained about just because the defect was inadvertent or because the removing defendant tenders a belated correction.

*Kisor,* 338 F.Supp.2d at 1281.

Attempting to avoid the plain language of the jurisdictional statutes, Defendants hinge their argument on what other federal courts have done. Of the seven cases cited in the body of Defendants' brief, however, four are no longer tenable since they predate the 1988 amendment to 28 U.S.C. § 1447(c). (*See* Defs.' Opp. at 14, *ll.*20-28.) Regardless, the bulk of Defendants' cases are limited to the Fifth, Seventh, and Tenth Circuits. (*See id.* at 14-15 & n.3.) The only decision on this issue within the Ninth Circuit, however, favors Plaintiffs' position and Plaintiffs' interpretation of the pertinent statutes. *See Employers-Shopmens Local 516 Pension Trust v. Travelers Cas. & Surety Co. of Am.*, 2005 WL 1653629, at *4 (D. Or. July 6, 2005) (remanding case where the removing party failed to attach complete pleadings to notice of removal until after 30-day removal period had elapsed).

Defendants pointedly misrepresent the holding of the Oregon decision when they claim that it "pointedly does not order remand on the basis of the procedural defect." (Defs.' Opp. at 15, *ll.*10-11.) Here is what the court actually said: "I would be inclined to remand the action on the basis of the procedural defect alone, but the substantive question *also* requires remand." 2005 WL 1653629 at *4 (emphasis added). Thus, contrary to Defendants' claim, it is clear from the court's

1 decision that its remand order is based on both procedural and substantive grounds.

2 Finally, the primary case relied on by Defendants is the "on-point" *Yellow Transportation, Inc. v. Apex Digital, Inc.*, 406 F.Supp.2d 1213 (D. Kan. 2005). (*See* Defs.' Opp. at 14, *ll*.3-16). *Yellow Transportation*, however, has recently and thoughtfully been distinguished by another Tenth Circuit case for paying only lip service to the mandate of strict construction:

> The Court has carefully reviewed the thorough and well-considered *Yellow Transportation* opinion, and agrees with it in most material respects. However, this Court finds that *Yellow Transportation*'s conclusion fails to give sufficient weight to the Supreme Court's instruction that removal statutes are to be "strictly construed." Id. at 1218-19 ("while the court is certainly mindful that removal statutes are to be strictly construed and all doubts resolved in favor of remand, the court finds nothing in the statute that requires remand for the particular procedural defect at issue here"). ***If strict construction is the command, it is incumbent that the Court to apply the statute strictly as written, even -or perhaps particularly - in the face of seemingly inconsequential defects.*** That courts on occasion have entertained defective or amended removals without complaint reflects a certain pragmatism that is difficult to criticize, but they do so by assuming that "strictly construed" does not necessarily mean "strictly construed." Justice is best served when the law operates predictably and reliably. Engaging in somewhat arbitrary exercises of "discretion" to avoid what might seem to be the inflexible operation of a persnickety rule undermines that predictability, and, more importantly, operates as an artificial relief valve that prevents sufficient pressure from building in opposition to the rule to force its rethinking. If the Court should not apply the text of § 1446(a) strictly as written, that command should come from the Supreme Court or the 10th Circuit, not from the fact that other District Courts have chosen not to do so.

*Durand*, 2007 WL 1395336, at *1 (emphasis added).

Here, as in *Kisor, Durand,* and the Oregon decision, strict construction of the removal statutes plainly requires remand.

## IV. Defendants Fail Their Burden Of Proof On The Requirements Of CAFA Or Diversity Jurisdiction.

Plaintiffs have already demonstrated that remand is mandatory under the home controversy exception to CAFA since the ALC Corporate Defendants are considered citizens of California under the "place of operations" test. (*See* section II, *supra.*) Remand is further mandated by Defendants' failure to comply with the removal statute within the 30-day period.

### A. Harper or No Harper, There Is No Absolute Diversity in This Case.

Plaintiffs have already demonstrated that remand is mandatory under the home controversy exception to CAFA since the ALC Corporate Defendants are considered citizens of California under the "place of operations" test. (*See* section II, *supra*.) Because the ALC Corporate Defendants are California citizens, it follows that there is not "complete diversity" between the parties with or without individual Defendant Harper.[3] Indeed, the fact that "minimal diversity" between the parties would gives rise to CAFA jurisdiction puts the lie to Defendants' accusations that Harper is a "sham Defendant" named solely to defeat complete diversity.

Far from a "sham Defendant," Harper was named specifically in response to Defendants' "indispensable parties" argument before Judge Real, in which Defendants claimed - contrary to their assertions before this Court - that the American Laser Centers clinics were not owned and operated by the ALC Corporate Defendants. Based on the fact that laser hair removal implicates the practice of medicine under California law and requires medical supervision, and based on the fact that Dr. Harper identified himself to Plaintiffs as the "owner" of the California clinics, and in reliance on

---

[3]Defendant Morgan's citizenship is also moot since remand is mandatory under the CAFA home controversy exception, and the California citizenship of the ALC Corporate Defendants renders complete diversity impossible. Nevertheless, Plaintiffs have never "conceded" that Morgan is a Michigan citizen as Defendants' claim. (*See* Defs.' Opp. at 8, *ll*.27-28.) Morgan's Michigan citizenship is based on nothing but information and belief, and Plaintiffs' Motion to Remand takes Defendants to task for this deficiency. (*See* Pls.' Remand Mot. at 6, *ll*.14-17.) All Defendants had to do was file a declaration from Morgan attesting to his residency in order to remove all doubt, but this they failed to do. Given that Chelsea Klinke, the Western Area Vice President of Operations, has switched residences from Michigan to California since the filing of Plaintiffs' lawsuit, it is entirely plausible that Morgan has as well. If anything, Defendants' unexplained failure to produce a declaration from Morgan on this issue raises an inference that he is not a Michigan citizen. *See* 31A C.J.S. *Evidence* § 156(2); 29 Am.Jur.2d *Evidence* § 178.

1  Defendants' representations that they did not own or operate the clinics, Plaintiffs named Dr. Harper
2  as a Defendant in this lawsuit after conducting an investigation and concluding, in good faith, that
3  he could be a joint employer.
4        Defendants' reliance on *Reynolds v. Bement*, 36 Cal. 4th 1075 (2005) is both premature and
5  misplaced. Dr. Harper's potential liability does not stem from his status as corporate agent, director,
6  or officer (per *Reynolds*, 36 Cal. 4th at 1087-90), but from his status as either Plaintiffs' employer
7  or Defendants' alter ego. Defendants claim that they have filed a motion to dismiss Harper under
8  Fed. R. Civ. P. 12(b)(6), but no such motion is currently docketed (another "clerical error"?).
9  Regardless, the viability of Plaintiffs' claims against Dr. Harper will be resolved if and when
10  Defendants' motion is filed.

11        **B.**      **Defendants' Extrapolations of the Amount in Controversy Are Flawed.**

12        Again, because the home controversy exception is dispositive, the amount in controversy
13  under CAFA jurisdiction is moot. Nevertheless, it is worth emphasizing that Defendants have still
14  failed to meet their burden of showing that the aggregate amount in controversy exceeds Five
15  Million Dollars ($5,000,000). *See* 28 U.S.C. 1332(d). Defendants admit that Plaintiffs' Complaint
16  "prays for an unspecified amount of damages." (*See* Defs.' Removal at 4, *l.*22). Thus, contrary to
17  the cases cited by Defendants, there is no "allege[d] damages" or "sum claimed" by Plaintiffs that
18  controls the amount in controversy. (See Defs.' Opp. at 10, *ll.*22-28.) Defendants are thus required
19  to prove the amount in controversy by a preponderance of the evidence. *See Abrego Abrego v. The*
20  *Dow Chemical Co.*, 443 F.3d 676, 682 (9th Cir. 2006).
21        Rather than supplying evidence on the actual amount in controversy, Defendants instead
22  attempt to extrapolate damage calculations from certain allegations in Plaintiffs' Complaint. (*See*
23  Defs.' Opp. at 11.) In other words, Defendants never go beyond the "information and belief" stage
24  posited in their removal petition in order to prove amount in controversy. (*See* Defs.' Removal at
25  6, *ll.*13-15). The problem with Defendants' extrapolations is that important variables are missing,
26  such as the number of clinics, the years in which those clinics operated, and the number of plaintiffs
27  who worked during each of those years. For example, although Defendants' extrapolations are based
28  on a four-year statute of limitations, the Supplemental Declaration of Kevin Piecuch admits that the
    first American Laser Centers clinics in California did not open until mid-2005 - less than 3 years ago

1  - with more clinics added in 2006 and 2007. (*See* Piecuch Supp. Decl. at 10.) Without concrete
2  information as to the number of clinics and their years of operation, and the number of employees
3  who worked during each of those years, it is sheer speculation to determine the aggregate amount
4  in controversy, as Defendants' extrapolations demonstrate.

5  In sum, Defendants' damage extrapolations are based on assumptions that are neither within
6  the four corners of Plaintiffs' Complaint nor submitted as evidence by Defendants. Because
7  Defendants are in the best position to know such specific data, Defendants' unexplained failure to
8  produce this evidence raises a negative inference against the amount in controversy being met. *See*
9  31A C.J.S. Evidence § 156(2); 29 Am.Jur.2d Evidence § 178; *see also Ortiz v. Menu Foods, Inc.*,
10 525 F.Supp.2d 1220, 1235 (D. Haw. 2007) (unable to determine amount in controversy for CAFA
11 purposes where defendant failed to supply specific information in its possession that would assist
12 the court's determination).

## V.    Alternatively, Court May Remand "In The Interest Of Justice."

14 Suddenly turning strict statutory constructionist (after taking a much more liberal view of
15 the removal statute), Defendants argue that the Court cannot order remand under the "interest of
16 justice" exception to CAFA "since it also requires consideration of the previously-filed action." (*See*
17 Defs.' Opp. at 13, *ll*.17-18.) Significantly, Defendants have also offered no authority for their
18 position on the meaning of a "previously-filed action" under CAFA,"a statute in which some major
19 terms are left undefined, certain of the provisions of which have been aptly characterized as
20 'bewildering' or 'clumsily crafted,' and . . . [which] is a headache to construe." *See Lao*, 455
21 F.Supp.2d at 1048. Regardless, the "interest of justice" exception contains six (6) factors for the
22 Court to consider, so even if one were inapplicable, it would not preclude the Court from remanding
23 in the exercise of its discretion. *See* 28 U.S.C. § 1332(d)(3).

## VI.   Plaintiff's Invocation Of CAFA Jurisdiction In A Previously-Filed Nationwide Class Action Does Not Constitute A "Judicial Admission" That CAFA Jurisdiction Applies To This California State Only Class Action, Or Give Rise To "Judicial Estoppel."

27 Perhaps believing that the best defense is a good offense, Defendants begin their opposition
28 with a specious "estoppel" argument against Plaintiffs. Defendants claim that Plaintiffs' invocation
   of CAFA jurisdiction in a previously filed nationwide class action - since voluntarily dismissed -

somehow constitutes a "judicial admission" in this case and that Plaintiffs are now "estopped" from arguing that CAFA jurisdiction does not apply. (*See* Defs.' Opp. at section IV.A.) That previous lawsuit, however, as Defendants anticipate and acknowledge, included federal claims and was intended to encompass multiple state plaintiffs, as demonstrated by Plaintiffs' First Amended Complaint. Regardless, judicial estoppel requires "success in the prior proceeding," which makes it clearly inapplicable here. *See United Steelworkers of America v. Retirement Income Plan for Hourly-Rated Employees of Asarco, Inc.*, 512 F.3d 555, 563 (9th Cir. 2008).

**VII. Conclusion**

For all of the foregoing reasons, Plaintiffs respectfully request the Court to grant their motion to remand as well as any other relief previously requested.

Dated: April 18, 2008                                    GLANCY BINKOW & GOLDBERG LLP


By:   /s/ Kara Wolke
       Kara Wolke
       Lionel Glancy (SBN 134180)
       Kevin Ruf (SBN 136901)
       Kara Wolke (SBN 241521)

       1801 Avenue of the Stars, Suite 311
       Los Angeles, CA 90067
       Telephone: 310-201-9150
       Facsimile: 310-201-9160

       *Attorneys for Plaintiffs and Proposed Plaintiffs Classes*

**PROOF OF SERVICE BY ELECTRONIC POSTING
PURSUANT TO NORTHERN DISTRICT OF CALIFORNIA LOCAL RULES AND
ECF GENERAL ORDER NO. 45
AND BY MAIL ON ALL KNOWN NON-REGISTERED PARTIES**

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action. My business address is 1801 Avenue of the Stars, Suite 311, Los Angeles, California 90067.

On April 18, 2008, I served the following by posting such documents electronically to the ECF website of the United States District Court for the Northern District of California:

**1   REPLY BRIEF IN SUPPORT OF MOTION TO REMAND, OR ALTERNATIVELY FOR LIMITED JURISDICTIONAL DISCOVERY**

**2   DECLARATION OF KARA M. WOLKE IN SUPPORT OF PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO REMAND**

on all ECF-registered parties in the action and, upon all others not so-registered but instead listed below, by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at Los Angeles, California. Those email addresses are:

Wcarroll@schiffhardin.com
calendar@schiffhardin.com
Ebrown@schiffhardin.com
Llove@schiffhardin.com

Sspeakma@schiffhardin.com
mreyes@thelen.com
ktaylor@thelen.com
aksmith@thelen.com
lshaible@thelen.com

There are no non-registered parties to the litigation.

Executed on April 18, 2008, at Los Angeles, California.
I certify under penalty of perjury that the foregoing is true and correct.

*S/Daniel C. Rann*
Daniel C. Rann