1   Lionel Glancy (SBN 134180)
    Email: lglancy@glancylaw.com
2   Kevin Ruf (SBN 136901)
    Email: kevinruf@yahoo.com
3   Kara Wolke (SBN 241521)
    Email: kwolke@glancylaw.com
4   **GLANCY BINKOW & GOLDBERG LLP**
    1801 Avenue of the Stars, Suite 311
5   Los Angeles, CA 90067
    Telephone: 310-201-9150/Fax: 310-201-9160
6
7   *Attorneys for Plaintiffs and Proposed Plaintiff Classes*

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10  | KAY LOVE, MELINDA AHUMADA, PAULA | Case No. CV-08-1221-CRB |
11  AUSTIN, ASHLEY BRISENO, LISA CASEY,
    JESSICA BURIA, NATALIE DOLABJIAN,        **PLAINTIFFS' OPPOSITION TO**
12  NADIA KAMELI, ASHLEE MOCHAN,             **DEFENDANTS' AMENDED**
    CHRISTINE PEDRO, DAYNA RACOW,            **MOTION TO DISMISS PURSUANT**
13  BEVERLY ALEXANDER, KATHRYN               **TO FRCP 12(b)(6) OR,**
    CAMERON, FEY REICHMAN, CYNTHIA           **ALTERNATIVELY, FOR MORE**
14  RODIER, SANDRA SEWERIN, and AMY          **DEFINITE STATEMENT**
    WILLIAMS, on behalf of themselves and those  **PURSUANT TO FRCP 12(e)**
15  classes similarly situated,

16  Plaintiffs,                              **[Filed concurrently with the**
                                             **Declaration of Kara Wolke in Support**
17  v.                                       **of Plaintiffs' Opposition to**
                                             **Defendants' Amended Motion to**
18  ALC PARTNER, INC., dba AMERICAN LASER    **Dismiss]**
    CENTERS; ALC ACQUISITION COMPANY
19  LLC; AMERICAN LASER CENTERS OF           **Date**:   June 6, 2008
    CALIFORNIA, LLC; RICHARD MORGAN;         **Time**:   10:30 AM
20  DENNIS HARPER; and DOES 1 through 200,   **Place**:  Courtroom 8
    inclusive,                               **Before**: Hon. Charles R. Breyer
21
22  Defendants.                              Complaint Filed:    January 25, 2008
                                             Notice of Removal: February 29, 2008
23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

I.    PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3

II.   SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4

III.  PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5     A.    The Dismissal Of Plaintiffs' Prior Lawsuit Was Based On The Alleged Failure To
            Join "Indispensable" Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6

7     B.    Defendants' "Indispensable" Parties Argument Was A Fraud Upon The Court, And
            Required Plaintiffs To Refile Their State-Law Claims In California. . . . . . . . . . 4

8     C.    Defendants' Recent Reclassification Of Their Managerial Employees Vindicates
            Plaintiffs' Claims And Undermines The Instant Motion. . . . . . . . . . . . . . . . . . . 5

9

IV.   STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

10

V.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11    A.    Plaintiffs' First Through Seventh Claims For Relief Against The Corporate
            Defendants Are Legitimate And Sufficiently Pled. . . . . . . . . . . . . . . . . . . . . . . . 7

12

13    B.    Contrary to Defendants' Entire Motion, The Bell Decision Did Not Ring In A
            Heightened Factual Pleading Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

14    C.    Contrary To Defendants' Entire Motion, Conclusions And Even Conclusory
            Allegations Are Acceptable Under The Notice Pleading Standard. . . . . . . . . . . 8

15

16    D.    Plaintiffs' Eighth Through Tenth Claims Are Viable As A Matter Of Law.
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      1.    Plaintiffs' unfair business practices claim does not seek "improper" damages.
17          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      2.    Plaintiffs' conversion claim is not defeated by the lack of a "specific,
18          identifiable sum" at the pleading stage. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      3.    Plaintiffs' unjust enrichment claim by any other name would as viable.
19          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

20

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

## CASES

3

Ballard v. Equifax Check Services, Inc.,
    158 F.Supp.2d 1163 (E.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

4

Beliveau v. Caras,
    873 F.Supp. 1393 (C.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5

6

Bell Atlantic Corp. v. Twombley,
    127 S. Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6-8

7

California Emergency Physicians Medical Group v. Pacificare,
    111 Cal.App.4th 1127 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

8

9

California Service Station etc. Ass'n v. Union Oil Co.,
    232 Cal.App.3d 44 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

10

Cohens v. Virginia,
    19 U.S. 264, 6 Wheat. 264, 5 L.Ed. 257 (1821) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

11

12

Cortez v. Purolator Air Filtration Products Co.,
    23 Cal.4th 163 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,2,10

13

Dinosaur Development, Inc. v. White,
    216 Cal.App.3d 1310 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,12

14

DSU Aviation, LLC v. PCMT Aviation, LLC,
    2007 WL 3456564 (N.D. Cal. Nov. 14, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 13-15

15

16

Edwards v. Marin Park, Inc.,
    356 F.3d 1058 (9th Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

17

Erickson v. Pardus,
    127 S. Ct. 2197 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18

19

First Nationwide Sav. v. Perry,
    11 Cal.App.4th 1657 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

20

Francis T. v. Village Green Owners Assn.,
    42 Cal.3d 490 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,16

21

22

Hirsch v. Bank of America, N.A.,
    107 Cal.App.4th 708  (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13

23

Irwin v. Mascott,
    112 F.Supp.2d 937 (N.D. Cal. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

24

25

Korea Supply Co. v. Lockheed Martin Corp.,
    29 Cal.4th 1134 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

26

27

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,
    507 U.S. 163 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

28

Melchior v. New Line Productions, Inc.,
    106 Cal.App.4th 779 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Mendiodo v. Centinela Hosp. Med. Ctr.,
    521 F.3d 1097 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Morrison v. Land,
    169 Cal. 590 (1915) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Murphy v. Kenneth Cole Productions, Inc.,
    40 Cal.4th 1094 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Reyes v. Downey Sav. & Loan Assoc.,
    2008 WL 867722 (C.D. Cal. March 29, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,9

Reynolds v. Bement,
    36 Cal.4th 1075 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Rojo v. Klinger,
    52 Cal.3d 65 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Skaff v. Meridien N. Am. Beverly Hills, LLC,
    506 F.3d 832 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Smith v. Simmons,
    2008 WL 744709 (E.D. Cal. March 18, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,15, 16

Stevenson v. Superior Court,
    16 Cal.4th 880 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,11

Swierkiewicz v. Sorema N.A.,
    534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Williams v. Gerber Products Co.,
    2008 WL 1776522 (9th Cir. April 21, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## STATUTES & RULES

Cal. Bus. & Prof. Code § 17201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Cal. Labor Code § 218.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

California Business and Professions Code section 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. Civ. P. 8(d)(2)-(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Civ. P. Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 6, 7

Fed. R. Civ. P. Rule 12(b)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-4, 13

Fed. R. Civ. P. Rule 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Fed. R. Civ. P. Rule 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Civ. P. Rule 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Civ. P. Rule 8(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Labor Code section 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **I.    PRELIMINARY STATEMENT**

2         By the time the Court hears this motion, it will have been ***almost a year*** since Plaintiffs filed

3    their claims. Since July 2007, when Plaintiffs originally filed their claims, Defendants have deployed

4    a number of procedural tactics and delays to avoid answering Plaintiffs' complaint on the merits.

5    But the merit and plausibility of Plaintiffs' claims are demonstrated by the fact that, effective April

6    1, 2008, Defendants reclassified Plaintiff managers as nonexempt and started paying them overtime.

7    Under liberal federal pleading requirements, it falls upon "summary judgment and control of

8    discovery to weed out unmeritorious claims...."    Leatherman v. Tarrant County Narcotics

9    Intelligence & Coordination Unit, 507 U.S. 163, 168-69, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

10   The time has come for Defendants to answer Plaintiffs' claims.

11   **II.    SUMMARY OF ARGUMENT**

12        Defendants' 12(b)(6) motion is premised on a misreading of Bell Atlantic Corp. v.

13   Twombley, --- U.S. ---, 127 S. Ct. 1955, 1969, 167 L. Ed. 2d 929 (2007), which Defendants construe

14   as instituting a heightened factual pleading standard.  This is contradicted by the Bell Court itself:

15   "Here . . . ***we do not require heightened fact pleading of specifics***, but only enough facts to state

16   a claim to relief that is plausible on its face."  127 S. Ct. at 1974 (emphasis added).  Although

17   Defendants also contend that Plaintiffs' allegations are conclusory, detailed evidentiary facts are not

18   required under liberal notice pleading rules, "and there is no distinction drawn between the pleading

19   of facts, ultimate facts, or even conclusions of law."  Reyes v. Downey Sav. & Loan Assoc., ---

20   F.Supp. ---, 2008 WL 867722, at *4 (C.D. Cal. March 29, 2008).  In short, Defendants are perfectly

21   capable of framing a response to Plaintiffs' Complaint without further "fine-tuning" of the

22   pleadings.

23        Defendants' argument that Plaintiffs' Eighth through Tenth Claims for Relief are defective

24   "as a matter of law" is itself defective.  First, Plaintiffs' unfair business practices claim seeks

25   restitution for unpaid wages and other vested property interests.  This remedy is authorized by clear

26   California law.  See Cortez v. Purolator Air Filtration Products Co., 23 Cal.4th 163, 177-179 (2000).

27        Second, Plaintiffs' conversion claim is not defeated by the failure to establish a specific

28   identifiable sum ***at the pleading stage***, and Defendants can point to no precedent requiring dismissal

1   merely because the exact damages are not yet known or fixed.  Defendants' argument that the Labor

2   Code somehow preempts Plaintiffs' tort remedies also is fallacious since that could only occur if the

3   tort of conversion did not exist at common law (which it did).  Stevenson v. Superior Court, 16

4   Cal.4th 880, 899-900. (1997).  Regardless, the federal rules permit the pleading of alternative and

5   even inconsistent claims.  Fed. R. Civ. P. 8(d)(2)-(3).

6           Third, although Defendants contend that there is no claim for unjust enrichment in

7   California, this is contradicted by their own case (Dinosaur Development, Inc. v. White, 216

8   Cal.App.3d 1310, 1314-15 (1989)), as well as other authorities (e.g., Hirsch v. Bank of America,

9   N.A., 107 Cal.App.4th 708, 722 (2003) ("Appellants have stated a valid cause of action for unjust

10  enrichment . . . .")).  Again, Plaintiffs' pleading for equitable relief is not precluded by the existence

11  of other nonequitable remedies.  DSU Aviation, LLC v. PCMT Aviation, LLC, 2007 WL 3456564,

12  at *2 (N.D. Cal. November 14, 2007) (slip copy).

13          Defendants' arguments concerning the liability of the individual Defendants are similarly

14  feckless.  First, as Defendants concede, the California Supreme Court explicitly recognizes that

15  individual defendants may be personally liable for a company's wage and hour violations under

16  established common law and statutory theories.  See Reynolds v. Bement, 36 Cal.4th 1075, 1087-89

17  (2005).  This includes alter ego liability, as well as Plaintiffs' claims for unfair business practices,

18  conversion, and unjust enrichment.  By its express terms, an unfair business practice claim may be

19  stated against any "person" who commits an unfair business practice, which "shall mean and include

20  natural persons."  Cal. Bus. & Prof. Code § 17201.  Similarly, with respect to conversion, the

21  California Supreme Court has specifically held that corporate agents may be "jointly liable with the

22  corporation and may be joined as defendants if they personally directed or participated in the

23  tortious conduct."  Francis T. v. Village Green Owners Assn., 42 Cal.3d 490, 504 (1986).  Likewise,

24  Plaintiffs claim for unjust enrichment is an equitable common law remedy and in no way dependent

25  on Defendants' statutory violations.

26          Defendants only argument against Plaintiffs' alter ego allegations is that Plaintiffs "have not

27  pled sufficient facts."  This is not only untrue, but it also flies in the face of federal pleading

28  requirements.  Indeed, a nearly identical argument to the one made by Defendants here was recently

1   rejected by the federal district court in <u>Smith v. Simmons</u>, 2008 WL 744709, at *9-*11 (E.D. Cal.

2   March 18, 2008) (slip copy).  Plaintiffs' claims are not so opaque and inscrutable that Defendants

3   are unable to answer.  Again, under the federal notice pleading system, it falls upon "summary

4   judgment and control of discovery to weed out unmeritorious claims . . . ."  <u>Leatherman</u>, <u>supra</u>, 507

5   U.S. at 168-69.

6   **III.    PROCEDURAL HISTORY**

7       **A.    The Dismissal Of Plaintiffs' Prior Lawsuit Was Based On The Alleged Failure
            To Join "Indispensable" Parties.**

8
9           Defendants represent that the Central District of California previously granted Defendants'

10   motions to dismiss "identical" claims filed by Plaintiffs.[1]  Defendants would thus lead the Court to

11   believe that another court (the Honorable Manuel Real) already has upheld the merits of Defendants'

12   Motion, and that this Court can simply rubberstamp its approval.  What Defendants do not tell the

13   Court is that their prior motions to dismiss in the Central District of California were chiefly based

14   on Fed. R. Civ. P. Rules 12(b)***(7)*** and ***19***, for failure to join  "indispensable" parties.

15           Moving to dismiss Plaintiffs' claims in November 2007, Defendants asserted that "[t]he

16   principal and overriding defect in the [Complaint] is that Plaintiffs ***sued the wrong party.***"[2]

17   Incredibly, Defendants suddenly realized - in their ***second*** motion to dismiss - that they could not

18   be sued because "each of the clinics that are licensed to do business as American Laser Centers are

19   [actually] owned and operated by a separate limited liability corporation . . . incorporated in the state

20

21

22       [1]<u>See</u> Defendants' Amended Notice of Motion and Motion to Dismiss Plaintiffs' Complaint
     Pursuant to Federal Rules of Civil Procedure 12(b)(6); Alternatively, Motion for a More Definite
23   Statement Pursuant to Federal Rule of Civil Procedure 12(e) [hereinafter "Defs.' Motion"], at
     3:10-16.
24
25       [2]<u>See</u>  Declaration of Kara Wolke [hereinafter "Wolke Decl."], filed concurrently herewith,
     at ¶2 & Ex. 1, attaching copy of "Defendant ALC Partner, Inc.'s Notice of Motion and Motion to
26   Dismiss Pursuant to Federal Rules of Civil Procedure 12(B)(6) ***and 12(B)(7) and 19***; Alternatively,
     Motion for a More Definite Statement Pursuant to Federal Rule of Civil Procedure 12(E)," filed
27   November 2, 2007, in United States District Court, Central District of California, Case No.
     CV-07-4588-R(SHx) [hereinafter "Defs.' Second MTD"], at 1:12-13 (emphasis added).
28

1    in which the clinic does business."[3]  Unlike the instant motion, Defendants' argument was that

2    Plaintiffs' claims had to be dismissed pursuant to Rules 12(b)(7) and 19 since these subsidiary

3    limited liability corporations ("LLCs") were Plaintiffs' true employers and "indispensable" parties

4    who could not be joined.

5           The Honorable Manuel Real of the Central District of California apparently accepted

6    Defendants' argument and dismissed all of Plaintiffs' claims with 20 days leave to amend.  While

7    Judge Real did not articulate any reasoning,[4] the only basis upon which Judge Real could have

8    dismissed the entire complaint was the indispensable party issue under Rules 12(b)(7) and 19.  This

9    is because Defendants did not attack Plaintiffs' FLSA claims or several state wage-and-hour claims

10   (comprising Plaintiffs' Third, Fourth, Fifth, Sixth, and Seventh Claims for Relief) for failure to state

11   a claim under Rule 12(b)(6).[5]  Hence, because Judge Real dismissed Plaintiffs' claims in their

12   entirety, such dismissal could only have been based on Rules 12(b)(7) and 19 for failure to join

13   "indispensable" parties.  As such, Judge Real's prior ruling has no precedential value and no

14   practical application to the issues before this Court.

15        **B.     Defendants' "Indispensable" Parties Argument Was A Fraud Upon The Court,**
            **And Required Plaintiffs To Refile Their State-Law Claims In California.**
16
          Although Judge Real granted Plaintiffs 20 days leave to amend, there was no amendment
17
     Plaintiffs could make to cure the jurisdictional defect alleged by Defendants, namely, that the
18
     Central District of California could not exercise jurisdiction over the "indispensable" LLCs in Utah,
19
     Illinois, and other states.  Consequently, Plaintiffs' counsel decided to dismiss the case voluntarily
20
     and refile it in forums where the LLCs had sufficient contacts to establish jurisdiction if necessary.
21
     Hence, one case was filed in federal court in Michigan where Defendants' corporate headquarters
22
     are located and relating to American Laser Centers clinics across the country (hereinafter, "the
23
     Federal Class Action"); the other case was filed in California state court relating only to Defendants'
24

25   _____

26        [3]See id. at 1:16-18 (alteration added).

27        [4]See Wolke Decl., at ¶4 & Ex. 3 (attaching copy of Judge Real's Order).

28        [5]See Wolke Decl. at Ex. 1, Defs.' Second MTD at 2:17-20.

1  California clinics and asserting purely state-law claims (i.e., the instant case).

2      But Plaintiffs would not have had to dismiss their original action and refile separate state and

3  federal cases were it not for Defendants' misrepresentation that its subsidiary LLCs were Plaintiffs'

4  true employers and "indispensable" parties who could not be joined.  This misrepresentation was

5  recently exposed when Defendants' general counsel, Kevin Piecuch, filed a declaration in this Court

6  (where Defendants improperly removed Plaintiffs' state action) that contradicts his earlier

7  declaration in the Central District.  Specifically, in order to convince the Central District that the

8  subsidiary LLCs were separate "indispensable parties," Mr. Piecuch testified under penalty of

9  perjury that it was the LLCs that owned and operated the clinics.  Here, however, in order to

10  convince the Northern District that Defendants' principal place of business is Michigan, Mr. Piecuch

11  admitted that the corporate Defendants always have owned and operated the clinics.  A side-by-side

12  comparison of Mr. Piecuch's testimony reveals the brazen contradiction:

13           **Piecuch Declaration - December 10, 2007**[6]
     ALC-Partner, Inc. [merely] owns the name American Laser Centers.  There are at
14   least ***201 separate LLCs which own and operate clinics*** that are licensed to or
     otherwise permitted by ALC-Partner, Inc. to do business using the American Laser
15   Centers trade name.

16           **Piecuch Declaration - April 11, 2008**[7]
     Prior to December 1, 2007, ***Defendant ALC-Partner, Inc. operated clinics*** in various
17   states nationwide doing business as American Laser Centers.  Defendant ALC
     Acquisition Company LLC (now known as American Laser Centers LLC) purchased
18   the assets of ALC-Partner, Inc. and its related companies in November 2007, and
     ***began operating the clinics*** effective December 1, 2007.  ALC-Partner, Inc. remains
19   in existence ***but no longer owns and operates the clinics*** as of December 1, 2007.

20  (emphasis added).  As the Court can see, Defendants played procedural shell games and deliberately

21  misled the Central District of California into believing that the wrong employers had been sued.

22  Conspicuous by its absence from the instant Motion, however, is any contention that Plaintiffs have

23  sued the wrong party here by not suing the LLCs.

24  _____

25      [6]See Wolke Decl. at ¶3 & Ex. 2 (attaching Declaration of Kevin Piecuch in Support of Defs.'
26  Second MTD, filed December 10, 2007, in United States District Court, Central District of
    California, Case No. CV-07-4588-R(SHx), at ¶2 (emphasis and alteration added)).

27      [7]See Supplemental Declaration of Kevin Piecuch in Support of Defendants' Removal, filed
28  with this Court on April 11, 2008, at ¶2 (emphasis added).

**C.    Defendants' Recent Reclassification Of Their Managerial Employees Vindicates Plaintiffs' Claims And Undermines The Instant Motion.**

Effective April 1, 2008, Defendants converted all clinic "managers" in California to nonexempt hourly workers entitled to overtime pay.[8]  As part of this reclassification, Defendants lowered the employees' regular rate of pay so that they could continue working at least 50 hours per week while still earning the same compensation.[9]  This is not only an admission that those workers were misclassified and expected to work at least 10 hours of overtime, but it is also an admission that Plaintiffs' claims have merit.

**IV.    STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, the complaint "need only satisfy the Rule 8(a) notice pleading standard."  Edwards v. Marin Park, Inc., 356 F.3d 1058, 1062 (9th Cir.2004).  Under Rule 8(a), the plaintiff must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombley, - U.S. -, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007); see Fed. R. Civ. P. Rule 8(a)(2).

Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  Mendiodo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  In making this determination, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff.  Williams v. Gerber Products Co., - F.3d -, 2008 WL 1776522, at *1 (9th Cir. April 21, 2008).  "Rule 8's concluding admonishment that '[a]ll pleadings shall be so construed as to do substantial justice' confirms the liberality with which [the Court] should judge whether a complaint gives the defendant sufficient notice . . . ."  Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d

---

[8]See Wolke Decl. at 5 & Ex. 4 (attaching email by Chelsea Klinke, ALC Western Area Vice President of Operations, regarding new overtime procedures).

[9]Id.

1   832, 839 (9th Cir. 2007) (quoting former[10] Fed. R. Civ. P. 8(f)) (second alteration added).

2       For all of these reasons, the Rule 12(b)(6) motion is disfavored; "dismissal is proper only in

3   'extraordinary' cases." Beliveau v. Caras, 873 F.Supp. 1393, 1395 (C.D. Cal. 1995), cited in Defs.'

4   Motion at 6:19-20. Thus it falls upon "summary judgment and control of discovery to weed out

5   unmeritorious claims...." Leatherman, supra, 507 U.S. at 168-69.

6   **V.    ARGUMENT**

7       **A.    Plaintiffs' First Through Seventh Claims For Relief Against The Corporate
              Defendants Are Legitimate And Sufficiently Pled.**

8

9       Defendants recently filed a motion to dismiss ***every single claim for relief*** - nine causes of

10  action in all - in the companion Federal Class Action against Defendants. This is also Defendants'

11  ***fourth*** motion to dismiss since Plaintiffs' claims were originally filed, and the first in which not

12  every single claim was in jeopardy of being dismissed. So it is significant to have Defendants

13  acknowledge (finally) that at least ***some*** of Plaintiffs' claims are sufficient to get past the pleading

14  stage and worthy of answering. Unfortunately, this uptick in Defendants' credibility is short-lived.

15      **B.    Contrary to Defendants' Entire Motion, The Bell Decision Did Not Ring In A
              Heightened Factual Pleading Standard.**

16      Citing Bell Atlantic Corp. v. Twombley, supra, Defendants' first argument heading and

17  overarching theme is that "Plaintiffs Are Required to Assert ***Specific*** Factual Allegations . . . ." (See

18  Defs.' Motion at 6:12-13 (emphasis added)). But that is not what Bell says, and that is not what Bell

19  stands for. In the words of Bell: "Here . . . we do not require ***heightened fact pleading of specifics***"

20  (127 S. Ct. at 1974 (emphasis added)); "Here, our concern is not that the allegations in the complaint

21  were insufficiently ***'particular[ized]'***" (id. at 1973, n.14 (alteration in original; emphasis added));

22  "a complaint . . . does not need ***detailed*** factual allegations" (id. at 1963 (emphasis added)); "In

23  reaching this conclusion, we do not apply ***any "heightened" pleading standard*** . . . ." (id. at 1973,

24  n.14 (emphasis added)). Indeed, weeks after deciding Bell, the Supreme Court reversed a Tenth

25

26      [10]The Fed. R. Civ. P. were amended effective December 1, 2007, "as part of the general
27  restyling of the Civil Rules." See Advisory Committee Notes to 2007 Amendment (hereinafter
    "Advisory Notes"). Current Rule 8(e) replaces former Rule 8(f) and reads: "Pleadings must be
28  construed so as to do justice." This change is "intended to be stylistic only." See Advisory Notes.

1    Circuit decision for requiring "specific fact[]" pleading.  See Erickson v. Pardus, --- U.S. ---, 127

2    S. Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam).

3        Thus, far from requiring greater factual specifics, details, and particularization, Bell requires

4    "only" that a complaint allege "enough facts to state a claim to relief that is ***plausible*** on its face."

5    127 S. Ct. at 1974. (emphasis added).  Stated differently, "[f]actual allegations must be enough to

6    raise a right to relief above the ***speculative*** level."  Id. at 1965 (alteration and emphasis added).  As

7    such, Bell is a reaffirmation of the Federal Rules' liberal pleading requirements.  See id. at 1973;

8    accord Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) ("A

9    requirement of greater specificity for particular claims is a result that must be obtained by the

10   process of amending the Federal Rules, and not by judicial interpretation.").[11]

11       Here, as demonstrated below, Plaintiffs' entitlement to relief is beyond "speculative."

12   Plaintiffs have described each of their claims in sufficient detail to give Defendants "fair notice of

13   what the . . . claim is and the grounds upon which it rests."  See Bell, 127 S. Ct. at 1964.  That is

14   all that is required.  Even though much evidence is still in Defendants' possession, Plaintiffs have

15   pleaded sufficient facts giving rise to a "reasonably founded hope that the discovery process will

16   reveal relevant evidence" to support their claims.  See id. at 1967 (internal quotation marks omitted).

17       **C.    Contrary To Defendants' Entire Motion, Conclusions And Even Conclusory
             Allegations Are Acceptable Under The Notice Pleading Standard.**

18

19       Although Defendants repeatedly chastise Plaintiffs for pleading "conclusions" and

20   "conclusory allegations" (e.g., Defs.' Motion at 6, l.17 & 8, l.17), "[u]nder the notice pleading

21

22       [11] Defendants' argument is further flawed by divorcing Bell's reasoning and verbiage from
     the § 1 Sherman Act antitrust context in which they arose, and applying them in the wage-and-hour
23   context.  See 127 S. Ct. at 1964; see also Cohens v. Virginia, 19 U.S. 264, 6 Wheat. 264, 5 L.Ed. 257
     (1821) ("It is a maxim not to be disregarded, that general expressions, in every opinion, are to be
24   taken in connection with the case in which those expressions are used.").  In Bell, the plaintiffs
     rested their §1 claims on descriptions of parallel conduct and competitive reticence among the
25   defendants, but failed to state any facts actually suggesting collusion.  See id. at 1970, 1972.
     Wage-and-hour claims are not nearly so complicated as antitrust conspiracy claims, and the elements
26   of Plaintiffs' claims do not involve such complex factual matters.  At best, Bell stands for the
     proposition that where claims involves more complex matters (e.g., antitrust), amplified factual
27   allegations are required to establish a "plausible" claim.

28

1   system, detailed evidentiary facts are not required to be included in the complaint, and ***there is no***

2   ***distinction drawn between the pleading of facts, ultimate facts, or even conclusions of law.***"

3   Reyes v. Downey Sav. & Loan Assoc., - F.Supp. -, 2008 WL 867722, at p.4 (C.D. Cal. March 29,

4   2008) (Westlaw page number given; publication page number unavailable).  Indeed, "[s]ubject to

5   a few exceptions, ***conclusory allegations are perfectly proper in federal actions.***"  Schwarzer,

6   Tashima, Wagstaffe, California Practice Guide:  Federal Civil Procedure Before Trial (The Rutter

7   Group 2008), at § 8:27.  For example, a federal complaint may allege that defendant "***negligently***

8   drove a motor vehicle against plaintiff" resulting in a specific injury.  See Appendix of Forms, Fed.

9   R. Civ. P., Civil Form 11 ("Complaint for Negligence"), at ¶2 (emphasis added).  As with negligence

10  claims, few essential facts are required to plead Plaintiffs' wage-and-hour claims; the elements

11  themselves state what happened and give Defendants the requisite notice.

12      **D.      Plaintiffs' Eighth Through Tenth Claims Are Viable As A Matter Of Law.**

13      Defendants contend that Plaintiffs' unfair business practices, conversion, and unjust

14  enrichment claims are defective "as a matter of law" against all Defendants, and therefore must be

15  dismissed.  (See Defs.' Motion at section III.D.)  But it is Defendants' arguments that are defective.

16      **1.     *Plaintiffs' unfair business practices claim does not seek "improper"***
            ***damages.***

17

18      Defendants contend that Plaintiffs' unfair business practices claim is defective against all

19  Defendants because Plaintiffs are requesting damages to which they are not entitled.  Defendants

20  argue that only injunctive relief and restitution are authorized under California Business and

21  Professions Code section 17200, *et seq.* (commonly referred to as the Unfair Competition Law, or

22  "UCL"), whereas Plaintiffs are improperly seeking "damages."   This argument misconstrues

23  Plaintiffs' Complaint and should be rejected.

24      First, as a matter of fact, Plaintiffs are indeed seeking only restitution under their UCL claim.

25  See Complaint at ¶115 ("Named Plaintiffs and Class members seek ***restitution***…." (emphasis

26  added)); See also id. at ¶ XVI.J (prayer for "***[r]estitution*** of all money due to Named Plaintiffs and

27  Class members from the unlawful and unfair business practices of Defendants" (emphasis added)).

28      Second, Plaintiffs are seeking restitution of unpaid wages and overtime (Complaint at ¶115),

---

1   which Plaintiffs are clearly authorized to recover under the UCL.  See Cortez v. Purolator Air

2   Filtration Products Co., 23 Cal.4th 163, 177-179 (2000) (holding that employees may seek

3   restitution for unpaid wages under the UCL for up to four years before the filing of the complaint).

4   Hence, no matter what Defendants' other arguments may be, Plaintiffs UCL claim is not defective

5   as a matter of law.

6       Third, Defendants' argument concerning premium pay for meal and rest break violations is

7   self-contradictory.  Defendants admit that such pay constitutes "wages" under the California

8   Supreme Court's decision in Murphy v. Kenneth Cole Productions, Inc., 40 Cal.4th 1094 (2007).

9   As "wages," such pay is recoverable per Cortez, supra.  Moreover, such premium pay is ***in addition***

10  ***to*** any pay received for working during missed meal and rest periods - hence the "premium" part.

11   So Defendants' argument that such pay cannot be considered restitution or "unpaid wages" is false.

12  (See Defs.' Motion at 12:20-22.)

13       All the other items that Defendants complain about - improperly deducted wages,

14  unreimbursed expenses, vested vacation time, and "waiting time penalties" - are similarly subject

15  to restitution since they are all in the nature of money either acquired by an unlawful practice or in

16  which Plaintiffs have a vested property interest.  Even so-called "waiting time penalties" under

17  Labor Code section 203 are not "penalties" per se, but wages that continue to accumulate by virtue

18  of the employer's failure to pay separation wages.  In that respect, the right to receive the wages

19  becomes a vested property right of the employee and the proper subject of restitution.  Cf. Cortez,

20  23 Cal.4th at 178 (wages which are due but unpaid are the proper subject of restitution).

21       Defendants' complaints about attorney fees and interest are similarly unavailing, and would

22  not extinguish Plaintiffs' UCL claim in any event.  Attorney fees are recoverable where a borrowed

23  statute, upon which a UCL claim is based, permits such recovery.  See California Service Station

24  etc. Ass'n v. Union Oil Co., 232 Cal.App.3d 44, 58 (1991).  Here, Plaintiffs' UCL claims are

25  premised on Labor Code violations that provide for attorneys' fees.  E.g., Cal. Lab. Code § 218.5.

26  Furthermore, contrary to Defendants' argument, several cases have held that prejudgment interest

27  is a recoverable component of "restitution" under the UCL.  See Ballard v. Equifax Check Services,

28  Inc., 158 F.Supp.2d 1163, 1176-1177 (E.D. Cal. 2001); Irwin v. Mascott, 112 F.Supp.2d 937, 956

(N.D. Cal. 2000).

### 2. *Plaintiffs' conversion claim is not defeated by the lack of a "specific, identifiable sum" at the pleading stage.*

Defendants posit two meritless arguments against Plaintiffs' conversion claim. (<u>See</u> Defs.' Motion at section III.D.2.) First, after admitting that money may be the subject of a conversion claim, Defendants first argue that Plaintiffs' claim must be dismissed for failing to establish that "a specific identifiable sum is at issue." (<u>See id</u>. at 13:12-17.) While Plaintiffs damages may currently be undetermined, there is little chance, at the end of the day, that the Court is going to award Plaintiffs an amorphous indeterminate sum of damages. As stated in Plaintiffs' Complaint:

> The exact amount of monies owed to Named Plaintiffs and Class members, and each of them, is capable of being made certain. The specific identifiable sum of money to which Named Plaintiffs and Class members are entitled varies per Class member and will be established at trial in an amount according to proof.

(Complaint at ¶120.) Defendants can point to no precedent requiring the dismissal of Plaintiffs' conversion claim at the pleading stage merely because the exact damages are not yet known or fixed.

Defendants' second argument is based on a misrepresentation of <u>Stevenson v. Superior Court</u>, 16 Cal.4th 880 (1997). Citing <u>Stevenson</u>, Defendants argue that Plaintiffs' statutory remedies under the Labor Code are "***exclusive and no other remedy is allowed***." (Defs.' Motion at 13, ll.18-20 (emphasis in original).) Basically, Defendants are arguing that the Labor Code preempts the common law tort of conversion. But that is not what Stevenson said or held. Stevenson merely recognized that "where a statute creates a right ***that did not exist at common law*** and provides a comprehensive and detailed remedial scheme for its enforcement, the statutory remedy is exclusive." 16 Cal.4th at 899-900 (quoting <u>Rojo v. Klinger</u>, 52 Cal.3d 65, 79 (1985) (emphasis added)). Here, of course, the tort of conversion did exist at common law, and predates the Labor Code, making <u>Stevenson</u> inapplicable. Indeed, even in <u>Stevenson</u>, the court recognized that the Fair Employment and Housing Act ("FEHA") did ***not*** provide the exclusive remedy for injuries arising from employment discrimination because, inter alia, "the right to freedom from invidious employment discrimination existed at common law." <u>Id</u>. at 900. Consequentially, Defendants' reliance on <u>Stevenson</u> is misplaced and not intellectually honest.

1    Defendants' citation to <u>California Emergency Physicians Medical Group v. Pacificare</u>, 111

2   Cal.App.4th 1127, 1137-38 (2003) is another wild goose chase.  Nothing in the <u>Pacificare</u> opinion,

3   however, says anything remotely close to tort remedies being precluded by statutory remedies.  If

4   Defendants want to deny that they converted Plaintiffs' money, so be it, but they should answer

5   Plaintiffs' Complaint and stop making up arguments that waste the time and resources of the parties

6   and the Court.

7    Finally, even if it were true that Plaintiffs would be limited to statutory remedies, Defendants

8   are wrong to conclude that Plaintiffs "cannot assert a concurrent conversion claim for the same

9   alleged wrongs."  (<u>See</u> Defs.' Motion at 14:1-2.)  Again, this is the pleading stage.  This is not

10  summary judgment, and these are not jury instructions.  The Federal Rules of Civil Procedure

11  explicitly permit a party to allege more than one statement of a claim "alternatively or hypothetically

12  . . . [and] ***regardless of consistency***."  <u>See</u> Fed. R. Civ. P. 8(d)(2)-(3) (emphasis and alteration

13  added).

14              **3.     *Plaintiffs' unjust enrichment claim by any other name would as viable.***

15   Defendants contend that there is no claim for unjust enrichment in California.  (Defs.' Motion

16  at 14:l.4.)  One of Defendants' very own cases, however, puts the lie to this claim.  In <u>Dinosaur</u>

17  <u>Development</u>, 216 Cal.App.3d 1310 (cited in Defs.' Motion at 14, ll.8-9), the court states:  "Unjust

18  enrichment . . . is synonymous with restitution . . . [and] there is no particular form of pleading

19  necessary to invoke the doctrine of restitution."  216 Cal.App.3d at 1314-15 (alteration added;

20  citations and quotations omitted).  If there is no form of pleading necessary to invoke this doctrine,

21  then Plaintiffs' claim - and the pleading of it - cannot be deficient as a matter of law or logic.

22   Although Defendants "surmise" that Plaintiffs are seeking restitution, Defendants claim that

23  "pleading unjust enrichment simply does not get them there."  (Defs.' Motion at 14, ll.11-12.)

24  Contrary to Defendants' superficial argument, however, the <u>Dinosaur</u> court was not so slavish to

25  captions and headings:  "Although the word itself is never mentioned in its complaint, plaintiff['s

26  unjust enrichment claim] is in essence pleading its entitlement to restitution."  216 Cal.App.3d at

27  1314 (alteration added).  Defendants cannot seriously maintain that Plaintiffs' Tenth Claim for Relief

28  must be dismissed ***without leave to amend*** merely because it was labeled "unjust enrichment"

1   instead of "restitution."  This is not advocacy; this is gamesmanship.  The fact that Defendants

2   "surmise" that Plaintiffs are seeking restitution means they have notice of the claim, which is all that

3   is required under the notice pleading standard.  (<u>See</u> sections IV & V.B, <u>supra</u>.)

4       Defendants' reliance on <u>Melchior v. New Line Productions, Inc.</u>, 106 Cal.App.4th 779 (2003)

5   is misplaced because, in that case, the court actually held plaintiff's unjust enrichment claim

6   preempted by the Copyright Act.  <u>See</u> <u>id</u>. at 793.  On the one hand, this holding presupposes the

7   existence of an unjust enrichment claim; on the other hand, the court's post-decision musings about

8   the viability of such claims under California law is dicta.  <u>See</u> <u>id</u>.; <u>see</u> <u>also</u> <u>Hirsch</u>, 107 Cal.App.4th

9   at 722 ("Appellants have stated a valid cause of action for unjust enrichment...");  <u>cf</u>. <u>First</u>

10  <u>Nationwide Sav. v. Perry</u>, 11 Cal.App.4th 1657, 1662-1663 (1992) (reversing judgment on demurrer

11  where trial court refused to allow amendment of complaint to state a claim for unjust enrichment).

12      Defendants' last gasp is that Plaintiffs' statutory remedies preempt their equitable remedies,

13  making the assertion of "unjust enrichment" untenable.  As already discussed with Plaintiffs'

14  conversion claim, this argument is dubious at the pleading stage.  Here, it is especially dubious since

15  Defendants have to travel all the way back to *1915* for a case to prop up their argument.  <u>See</u> Defs.'

16  Motion at 14:21-17 (<u>citing</u> <u>Morrison v. Land</u>, 169 Cal. 590, 586 (1915)).  Again, the Federal Rules

17  of Civil Procedure explicitly permit a party to allege more than one statement of a claim

18  "alternatively or hypothetically . . . [and] ***regardless of consistency***."  <u>See</u> Fed. R. Civ. P. 8(d)(2)-(3)

19  (emphasis and alteration added); <u>See</u> <u>also</u> <u>DSU Aviation, LLC v. PCMT Aviation, LLC</u>, 2007 WL

20  3456564, at *2 (N.D. Cal. Nov. 14, 2007) (slip copy) ("Because the Court understands Plaintiffs'

21  claim for unjust enrichment to be a claim for restitution pled in the alternative to their breach of

22  contract claim, Defendants' Motion to Dismiss this cause of action is DENIED.").

23      **E.    <u>Plaintiffs' Claims Against The Individual Defendants Are Viable.</u>**

24          **1.    *Plaintiffs have stated claims against Morgan and Harper as alter egos.***

25      Defendants first argue that Plaintiffs' First through Seventh Claims for Relief cannot be

26  maintained against the individual defendants since, under California law, corporate officers and

27  directors cannot be held personally liable for Labor Code violations.  (<u>See</u> Defs.' Motion at section

28  III.B.1.)  Plaintiffs, however, do not seek to impose liability on Morgan and Harper as mere

1   corporate agents "acting within the scope of their agency" or "merely by reason of their official

2   position."  See Reynolds v. Bement, 36 Cal.4th at 1087-88.  Nor do Plaintiffs seek to overturn the

3   California Supreme Court's holding in Reynolds, supra.  As Defendants concede, however, the

4   Reynolds court stated that individual defendants may still be personally liable for a company's wage

5   and hour violations ***under established common law and statutory theories***, id. at 1089, and one such

6   common law theory is the alter ego doctrine.  (See Defs.' Motion at 8, ll.10-12.)

7           Despite this concession, Defendants only argument against the application of the alter ego

8   doctrine to Morgan and Harper is that Plaintiffs "have not pled sufficient facts."  (Defs.' Motion at

9   8, l.13.)  This is not only untrue, but it also flies in the face of federal pleading requirements.  (See

10  sections IV, V.B, & V.C, supra.)  Defendants' argument deliberately ignores or marginalizes

11  Plaintiffs' well-pleaded factual allegations and instead "cherry picks" the Complaint's summations

12  and conclusions in order to support their Rule 12(b)(6) argument.  For example, while Plaintiffs do

13  allege that there is "a unity of interest and commonality of control" between the individual and

14  corporate Defendants (Complaint at  48), this "conclusion" is premised on antecedent factual

15  allegations concerning Morgan's personal identity with and control over American Laser Centers

16  (id. at  39), and Harper's similar role as medical director and owner of American Laser Center's

17  California clinics (id. at  40).   Regardless, whether you call them "ultimate facts," "conclusions of

18  law," or "conclusory," Plaintiffs' alter ego allegations are proper for pleading purposes, and intricate

19  underlying factual allegations are not required.  See, e.g., Reyes, supra, 2008 WL 867722, at p.4

20  (Westlaw page number given; publication page number unavailable).

21          What we have here is a fundamental disagreement over the level of pleading required to get

22  to the next level:  An answer by Defendants.  Plaintiffs' claims are not so opaque and inscrutable

23  that Defendants are unable to answer.  Although Defendants contend that they have no idea how to

24  formulate a responsive pleading, a "denial" is a good place to start.  Again, under the federal notice

25  pleading system, it falls upon "summary judgment and control of discovery to weed out

26  unmeritorious claims . . . ."  Leatherman, supra, 507 U.S. at 168-69.  It would obviously be difficult

27  at this preliminary stage for Plaintiffs to detail and particularize the precise "financial arrangement"

28  between American Laser Centers and the individual Defendants. (See Defs.' Motion at 9, ll.18-19.)

That is what discovery is for.  Indeed, a nearly identical argument to the one made by Defendants here was recently rejected by the federal district court in <u>Smith v. Simmons</u>, 2008 WL 744709 (E.D. Cal. March 18, 2008) (slip copy).

In <u>Simmons</u>, the defendants also brought a 12(b)(6) motion based on the plaintiff's "conclusory theory of alter ego liability." <u>Id</u>. at *9.  The district court, however, recognized that "alter ego determinations are 'highly fact-based, and require considering the totality of the circumstances.'" <u>Id</u>. at *11.  The court also took stock of Rule 8's liberal notice pleading requirements and concluded:

> While Plaintiff has not factually described how Simmons failed to treat the corporation as a distinct entity or what inequity will result from these circumstances (other than how to pay the contract), Defendants are nonetheless clearly on notice of Plaintiff's alter ego claim and can frame a defense. Discovery may show different facts, but Plaintiff has sufficiently alleged an alter ego theory of liability against Defendant Simmons for a breach of contract claim.

<u>Id</u>.  The court consequently denied defendants' 12(b)(6) motion, and this Court should do likewise. This result follows naturally from Rule 8's admonishment that "Pleadings must be construed so as to do justice."  Rule 8(e), Fed. R. Civ. P.

### 2. *Morgan and Harper can indeed be personally liable for unfair business practices, conversion, and unjust enrichment.*

Defendants next argue that Morgan and Harper cannot be held personally liable under Plaintiffs' Eighth through Tenth Claims for Relief because they are "solely predicated" on Defendants' wage and hour violations.  (Defs.' Motion at sec. III.C.1.)  This is simply untrue. Plaintiffs' UCL claim is a distinct cognizable statutory remedy; the conversion claim is a distinct cognizable common law remedy; and the unjust enrichment claim is a distinct cognizable equitable remedy.  <u>See</u> <u>Reynolds</u>, 36 Cal.4th at 1089 (recognizing that individual defendants may still be personally liable for a company's wage and hour violations under established common law and statutory theories).  Further, even if these claims were predicated on Defendants' Labor Code violations, it has been demonstrated that Harper and Morgan may be liable therefor as alter egos.

Specifically, Defendants argue that Plaintiffs cannot state a UCL claim against Morgan and Harper because it is "solely derivative of Labor Code claims, and cannot be used as a way to avoid the <u>Reynolds v. Bement</u> rule that there is no personal liability." (Defs.' Motion at 11, ll.1-3.)  As

1  already distinguished, however, <u>Reynolds</u> **does** allow personal liability under established common

2  law and statutory theories.  <u>Id.</u> at 1089.  While it is true that the UCL "borrows" wrongful conduct

3  from other areas of law, a UCL action is an independent cause of action with its own statute of

4  limitations, its own standing requirements, and its own liability standards.  Thus, it is neither a

5  substitute nor vessel for the wrongful conduct on which it is based, and a plaintiff need not plead

6  and prove the elements of the underlying wrongful conduct in order to state a UCL claim.  <u>See</u>

7  <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal.4th 1134, 1151 (2003).

8      By its express terms, a UCL claim may be stated against any "person" who commits an

9  unfair business practice, which "shall mean and include natural persons."  Cal. Bus. & Prof. Code

10  § 17201.  Morgan and Harper are natural persons.  Therefore, a UCL claim may be stated against

11  them.

12  Similarly, conversion is a common law tort – not a statutory wage and hour violation.  The

13  California Supreme Court has specifically held that corporate agents may be "jointly liable with the

14  corporation and may be joined as defendants if they personally directed or participated in the

15  tortious conduct."  <u>Francis T. v. Village Green Owners Assn.</u>, 42 Cal.3d 490, 504 (1986).

16      Likewise, Plaintiffs' claim for unjust enrichment is an equitable remedy and in no way

17  dependent on Defendants' statutory violations.  (<u>See</u> section V.D.3, <u>infra</u>.)  Although Defendants

18  complain that Morgan and Harper are not personally mentioned in these claims (Defs.' Motion at

19  section III.C.2), they are nonetheless covered by the Complaint's definition of "Defendants" ( 43),

20  as well as Plaintiffs' allegations of alter ego, agency, joint venture, and conspiracy (44-51).  Make

21  no mistake:  Plaintiffs allege that Morgan and Harper personally directed and participated in the

22  conduct that comprises Plaintiffs' UCL, conversion, and unjust enrichment claims.  <u>Reynolds v.</u>

23  <u>Bement</u> explicitly authorizes personal liability under such circumstances.  36 Cal.4th at 1089.

24  **F.    <u>Defendants' Alternative Request For A "More Definite Statement" Under Rule</u>**
   **<u>12(E) Also Should Be Denied.</u>**

25

26      The time has come to put an end to Defendants' dilatory tactics and procedural shenanigans.

   By the time the Court hears this motion, it will be **_nearly a year_** since Plaintiffs first raised these

27  claims in the Central District of California – still without an answer on the merits.  While

28

1   Defendants pretend that they have no way of answering Plaintiffs' claims, they can start with a

2   denial. If the Court concludes that the alleged pleading deficiencies are well-taken, notwithstanding

3   the arguments and authorities above, Plaintiffs respectfully request the opportunity to amend their

4   complaint to address any such pleading deficiencies.

5   **VI.**    **CONCLUSION**

6          For all the foregoing reasons, the Court should DENY Defendants' motion in its entirety.

7   Alternatively, Plaintiffs respectfully request leave to amend their Complaint as previously set forth.

8

9   Dated: May 16, 2008                              **GLANCY BINKOW & GOLDBERG LLP**

10

11                                                   ***/s/ Kevin F. Ruf***
                                                     Kevin F. Ruf

12                                                   Lionel Glancy (SBN 134180)
                                                     Email:  lglancy@glancylaw.com
13                                                   Kevin Ruf (SBN 136901)
                                                     Email:  kevinruf@yahoo.com
14                                                   Kara Wolke (SBN 241521)
                                                     Email:  kwolke@glancylaw.com
15                                                   1801 Avenue of the Stars, Suite 311
                                                     Los Angeles, CA 90067
16                                                   Telephone:  310-201-9150/Fax: 310-201-9160

17                                                   *Attorneys for Plaintiffs and Proposed Plaintiff*
                                                     *Classes*

18

19

20

21

22

23

24

25

26

27

28