1  ANN KANE SMITH, *aksmith@thelen.com*, CA BAR NO. 72698
   JENNIFER L. GOLBERG, *jlgoldberg@thelen.com*, CA BAR NO. 198150
2  MARYTZA J. REYES, *mreyes@thelen.com*, CA BAR NO. 218684
3  THELEN REID BROWN RAYSMAN & STEINER LLP
   333 South Hope Street
4  Twenty-Ninth Floor
   Los Angeles, California  90071
5  Telephone 213.576.8000
6  Facsimile 213.576.8080
   Attorneys for Defendants
7  ALC-PARTNER, INC.,
   RICHARD MORGAN and DENNIS HARPER
8
9  WILLIAM J. CARROLL, *wcarroll@schiffhardin.com*, CA BAR NO. 118106
   SARAH R. SPEAKMAN, *sspeakman@schiffhardin.com*, CA BAR NO. 215085
10 SCHIFF HARDIN LLP
   One Market, Spear Street Tower
11 Thirty-Second Floor
   San Francisco, CA  94105
12 Telephone:  415.901.8754
13 Facsimile:  415.901.8701
   Attorneys for Defendants
14 AMERICAN LASER CENTERS LLC (formerly known
   as ALC ACQUISITION COMPANY LLC) and
15 AMERICAN LASER CENTERS OF CALIFORNIA LLC

16
                **UNITED STATES DISTRICT COURT**
17
                **NORTHERN DISTRICT OF CALIFORNIA**
18

19  KAY LOVE, MELINDA AHUMADA,          | Case No.: CV081221 (CRB)
20  PAULA AUSTIN, ASHLEY BRISENO,       |
    LISA CASEY, JESSICA BURIA,          | **DEFENDANTS' MEMORANDUM OF**
21  NATALIE DOLABJIAN, NADIA            | **POINTS AND AUTHORITIES IN REPLY TO**
    KAMELI, ASHLEE MOCHAN,              | **PLAINTIFFS' OPPOSITION TO**
22  CHRISTINE PEDRO, DAYNA RACOW,       | **DEFENDANTS' MOTION  TO DISMISS**
23  BEVERLY ALEXANDER, KATHRYN          |
    CAMERON, FEY RICHMAN, CYNTHIA       | Date:      June 6, 2008
24  RODIER, SANDRA SEWERIN and AMY      | Time:      10:30 a.m.
    WILLIAMS, on behalf of themselves and | Place:   Courtroom 8
25  those classes similarly situated,    | Before:    Hon. Charles R. Breyer
26
                        Plaintiffs,
27
    v.
28

LA #616587 v4

1  ALC PARTNER, INC., dba AMERICAN
   LASER CENTERS; ALC ACQUISITION
2  COMPANY LLC; AMERICAN LASER
   CENTERS OF CALIFORNIA, LLC;
3  RICHARD MORGAN; DENNIS HARPER;
   and DOES 1 through 200, inclusive,
4
5                 Defendants.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LA #616587 v4

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF ARGUMENT ........................................................................... 1

II.   LEGAL ARGUMENT ..................................................................................... 2

    A.    Pleading Requirements Under The Federal Rules Of Civil Procedure. ................ 2

        1.    Plaintiffs Fail To Diminish *Bell Atlantic's* Pleading
            Requirements............................................................................................. 3

        2.    The Ninth Circuit Has Fully Embraced *Bell Atlantic*.................................. 5

    B.    The First Through Seventh Causes Of Action Cannot Be Maintained
        Against The Individual Defendants ............................................................... 6

        1.    Harper And Morgan Cannot Be Held Liable For ALC's
            Alleged Labor Code Violations.................................................................... 6

        2.    Plaintiffs Have Not Sufficiently Alleged An Alter Ego Theory................. 6

    C.    The Eighth, Ninth and Tenth Claims Should Be Dismissed Against
        The Individual Defendants Because They Were Inadequately Pled And
        Are Solely Predicated On Claims That Cannot Be Brought Against
        Them.......................................................................................................... 8

        1.    Plaintiffs' Allegations Against the Individual Defendants Are
            Insufficient to Maintain the Eighth, Ninth and Tenth Claims.................... 8

            a.    There Are No Allegations That Harper Or Morgan
                Converted Plaintiffs' Wages For Their Own Benefit..................... 9

            b.    *Bradstreet v. Wong* Bars Plaintiffs Eighth And Tenth
                Claims Against The Individual Defendants ................................... 10

    D.    Plaintiffs' Eighth, Ninth And Tenth Causes Of Action Are Defective
        And Must Be Dismissed, Without Leave To Amend, As To All
        Defendants.................................................................................................. 10

        1.    Plaintiffs' UCL Claim Seeks Improper Remedies ..................................... 10

            a.    *Murphy's* Reasoning Leads To The Conclusion That
                Plaintiffs Are Seeking Improper Damages.................................... 10

            b.    Plaintiffs Have No Restitution Interest In The Damages
                They Seek In Their Eighth Cause Of Action................................. 11

        2.    Plaintiffs' Ninth Claim For Conversion Is Defective................................. 13

        3.    Plaintiffs' Tenth Claim For Unjust Enrichment Is Defective.................... 14

III.  CONCLUSION ............................................................................................... 15

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Bell Atlantic Corp. v. Twombly*
  127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................................. 1, 2, 4

*Conley v. Gibson's*
  355 U.S. 41 (1957) ......................................................................................... 4

*Erickson v. Pardus* ---
  U.S. -- 127 S. Ct. 2197, 167 L. Ed. 1081 (2007) ...................................... 3

*Hokama v. E.F. Hutton & Co., Inc.*
  566 F. Supp. 636 (C.D. Cal. 1983) .............................................................. 6

*Jackson v. Marion County*
  66 F.3d 151 (7th Cir. 1995) .......................................................................... 4

*Knudsen v. CHSI of Cal., LLC*
  2008 U.S. Dist. LEXIS 20586 (E.D. Cal. Mar. 14, 2008) ......................... 6

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S.
  163, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993) ........................................ 3

*Mendiondo v. Centinela Hospital Medical Ctr.*
  521 F.3d 1097 (2008) .................................................................................... 5

*Montecino v. Spherion Corp.*
  427 F. Supp. 2d 965 (C.D. Calif. 2006) ................................................ 12, 13

*Neilson v. Union Bank of Cal., N.A.*
  290 F. Supp. 2d 1101 (C.D. Cal. 2003) ....................................................... 6

*Qwest Communs. Corp. v. Herakles, LLC*
  2008 U.S. Dist. LEXIS 22151 (E.D. Cal. Mar. 20, 2008) ................... 6, 7, 8

*Skaff v. Meridien N. America Beverly Hills, LLC*
  506 F.3d 832 (9th Cir. 2007) ........................................................................ 5

*Trustees of So CA Pipe Trades v. Temecula Mechanical, Inc.*
  438 F. Supp. 2d 1156 (C.D. Cal. 2006) ...................................................... 13

## STATE CASES

*Bradstreet v. Wong*
  161 Cal. App. 4th 1440 (2008) .................................................................... 10

*California Emergency Physicians Medical Group v. Pacificare*
    111 Cal. App. 4th 1127 (2003)......................................................................... 15

*Cortez v. Purolator Air Filtration Products Co. ("Cortez")*
    23 Cal. 4th 163 (2000).................................................................................... 11

*DSU Aviation, LLC v. PCMT Aviation, LLC*
    2007 WL. 3456564 (N.D. Cal. November 14, 2007)...................................... 15

*Farmers Insurance Exchange v. Zerin*
    53 Cal. App. 4th 445 (1997)........................................................................... 13

*Frances T. v. Village Green Owners Assn.*
    (1986) 42 Cal. 3d 490...................................................................................... 9

*Korea Supply Co. v. Lockheed Martin Corp., supra*
    29 Cal. 4th 1134 (2003).................................................................................. 12

*Morrison v. Land*
    169 Cal. 590 (1915)........................................................................................ 15

*Murphy v. Kenneth Cole Productions, Inc. ("Murphy")*
    40 Cal. 4th 1094 (2007)............................................................................ 10, 11

*Oakdale Village Group v. Fong*
    43 Cal. App. 4th 539 (1996)........................................................................... 13

*Prachasaisoradej v. Ralphs Grocery Company, Inc.*
    42 Cal. 4th 217 (2007).................................................................................... 12

*Reyes v. Downey Sav. & Loan Associate*
    2008 WL. 867722 (C.D. Cal. March 29, 2008).............................................. 3

*Reynolds v. Bement*
    36 Cal. 4th 1075 (2005).................................................................. 2, 6, 8, 9, 10

*Rojo v. Klinger*
    52 Cal. 3d 65 (1985)....................................................................................... 14

*Smith v. Simmons*
    2008 WL. 744709 (E.D. Cal. March 21, 2008).............................................. 8

*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*
    49 Cal. App. 4th 472 (1996)..................................................................... 13, 14

*Sonora Diamond Corp. v. Superior Court*
    83 Cal. App. 4th 523 (2000)............................................................................. 8

*Stevenson v. Superior Court*
     16 Cal. 4th 880 (1997)............................................................................................. 14, 15

*Williams v. Gerber Products Co.*
     2008 WL. 1776522 (9th Cir. April 21, 2008) ................................................................ 5

**STATUTES**

California Labor Code
     § 200............................................................................................................................... 12
     § 203............................................................................................................................... 12
     § 226.3............................................................................................................................ 11
     § 226.7.............................................................................................................. 11, 12, 13
     § 1194............................................................................................................................... 6
     § 1197.1.......................................................................................................................... 11

Federal Rule of Civil Procedure
     Rule 8(a)(2) ................................................................................................................ 2, 3

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1                    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    SUMMARY OF ARGUMENT**

3         Plaintiffs' Opposition highlights precisely why Defendants' motion to dismiss must be

4    granted.  Plaintiffs devote most of their Opposition to insisting that they have pled sufficient facts,

5    (while at the same time asserting that conclusions are sufficient), but references to those facts are

6    noticeably absent from their papers.  Instead, Plaintiffs rehash their procedural inabilities to

7    advance their previously filed action, "Love I",[1] in an apparent hope of winning some sympathy

8    and distracting the Court from their inadequate pleadings.

9         Plaintiffs further attempt to cloud the issues of this motion and waste the Court's time by

10   using their Opposition papers to make unsubstantiated attacks on Defendants' credibility,[2] to

11   speculate as to ALC's business decisions, litigation tactics, and the reasons why the Central

12   District of California chose to dismiss the Love I case in its entirety.  Defendants frankly do not

13   understand what any of those matters have to do with the question before the Court in this Motion:

14   namely, have Plaintiffs pled adequate facts to maintain their claims?  The answer to that question

15   is no, and Plaintiffs' efforts to focus the Court on other extraneous matters falls flat.

16        In short, Plaintiffs raise every excuse they can think of instead of directing this Court to the

17   requisite allegations in their Complaint.  They rely on a misinterpretation of the federal pleading

18   requirements, which is presented to this Court through mischaracterized partial quotations.  While

19   Defendants do not contend Plaintiffs must plead every detail of a claim, they are obligated to

20   provide facts demonstrating the grounds for the relief sought, beyond mere conclusions and a

21   formulaic recitation of the elements of a particular claim.  *Bell Atlantic Corp. v. Twombly*, 127 S.

22   Ct. 1955, 1969, 167 L. Ed. 2d 929, 944 (2007).  Plaintiffs should not be permitted to bring these

23   claims without factual support, hoping that this Court will sanction a fishing expedition.

24

25   [1] Defendants have asked the Court to take judicial notice of the Love I case.  See Defendants' Request for Judicial Notice filed on April 11, 2008 in support of their Motion to Transfer Venue.

26   [2] Plaintiffs most ridiculous and specious attack is their allegation that Kevin Piecuch contradicts himself in two declarations as part of some alleged misrepresentation.  (Plaintiffs' Opposition ("Opp."), 5:4-21.)  The absurdness of

27   this attack (which is debunked more fully in Defendants' Reply To Plaintiffs' Response To Defendants' Motion To Transfer Venue) is demonstrated by Plaintiffs need to add the word "merely" into the Mr. Piecuch's first declaration.

28   Such actions distort Mr. Piecuch's statement in an attempt to create contradiction where none exists.

1    Plaintiffs concede, as they must, that *Bell Atlantic* requires "amplified factual allegations"

2    of a claim's plausibility in "complex matters" (Opp., p. 8 fn 8). There is no dispute that this class

3    action is a "complex matter." Each of Plaintiffs' claims against Richard Morgan and Dennis

4    Harper (the "Individual Defendants") and their Eighth through Tenth Claims against all

5    Defendants fail to meet the *Bell Atlantic* pleading standard, and should be dismissed on that basis.

6    Plaintiffs' First through Seventh claims against the Individual Defendants fail as a matter

7    of law under *Reynolds v. Bement*, 36 Cal. 4th 1075, 1081-82 (2005), because they fail to plead

8    facts demonstrating that either of the Individual Defendants personally committed any acts for

9    which they could be individually liable under California law.

10    Plaintiffs' Eighth, Ninth and Tenth claims for relief fail against all Defendants because

11    they are solely derivative of their Labor Code claims and are inadequately pled.

12    Accordingly, this court should dismiss all claims against the Individual Defendants and the

13    Eighth, Ninth, and Tenth Claims against all Defendants.

14    **II.    LEGAL ARGUMENT**

15    **A.    Pleading Requirements Under The Federal Rules Of Civil Procedure.**

16    Plaintiffs would have this Court believe that the Supreme Court of the United States heard

17    a case and rendered a decision, all to maintain the status quo. Despite Plaintiffs' attempts, they fail

18    to refute the fact that the *Bell Atlantic* court expressly held:

19
> plaintiff's obligation to provide the "grounds" of his "entitlement to
20   > relief" requires more than labels and conclusions, and a formulaic
> recitation of the elements of a claim for relief will not do.... Factual
21   > allegations must be enough to raise a right to relief above the
> speculative level…
22

23    *Bell Atlantic, supra*, 127 S. Ct. at 1964-65 (citations omitted). As the Court explained, "Rule

8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief," which
24
necessitates "some factual allegation in the complaint...." *Id.* at 1965 n.3. Despite Plaintiffs
25
attempts to diminish the full effect of the *Bell Atlantic* Court's holding, they concede that their
26
"factual allegations must be enough to raise a right of relief above the speculative level" and
27
provide Defendants "fair notice of what … the claim is and **the grounds upon which it rests**."
28

1   (Opp., 8: 3-6, 12-13) (emphasis added).  By Plaintiffs' accepted standards, they have failed to

2   allege enough facts to withstand a motion for dismissal.

3                   1.          **Plaintiffs Fail To Diminish *Bell Atlantic's* Pleading Requirements.**

4           Plaintiffs are correct that *Bell Atlantic* does "not apply any 'heightened' pleading standard"

5   and, contrary to Plaintiffs' assertions, Defendants do not make any such statement in their moving

6   papers.  Plaintiffs only must meet the standard of Federal Rule of Civil Procedure Rule 8(a)(2),

7   which *Bell Atlantic* clarified.

8           Plaintiffs repeatedly cite part of a sentence from *Leatherman v. Tarrant County Narcotics*

9   *Intelligence and Coordination Unit*, 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993), in

10  an attempt to cloud the *Bell Atlantic* requirements.[3]  In *Leatherman,* the Court disapproved the

11  Fifth Circuit's more demanding rule for pleading a complaint under § 1983 than for pleading other

12  claims for relief.  *Id.* at 167.  The Fifth Circuit's "heightened pleading standard" mandated that

13  plaintiffs in § 1983 "cases against governmental officials involving the likely defense of immunity

14  ... state with factual detail and particularity the basis for the claim which necessarily includes why

15  the defendant-official cannot successfully maintain the defense of immunity." *Id.*  The Court held

16  that this requirement was "impossible to square" with the requirements of Rule 8(a)(2). *Id.* at 168.

17  In this context the Court made the following statement:

18              Perhaps if Rules 8 and 9 were rewritten today, claims against municipalities
                under § 1983 might be subjected to the added specificity requirement of Rule
19              9(b).  But that is a result which must be obtained by the process of amending
                the Federal Rules, and not by judicial interpretation. In the absence of such an
20              amendment, federal courts and litigants must rely on summary judgment and
                control of discovery to weed out unmeritorious claims sooner rather than
21              later.

22  *Id.* at 168-69.  Thus, Plaintiffs' use of the repeatedly cited "it falls upon 'summary judgment and

23  control of discovery to weed out unmeritorious claims...'" quotation is a distortion of the Court's

24  point.[4]  (Opp., 1:7-9, 7:4-5.)  The Court's noting of the unfortunate consequence that municipality-

25  ---
    [3]  Plaintiffs also cite to *Erickson v. Pardus* --- U.S. ---, 127 S. Ct. 2197, 167 L. Ed. 1081 (2007), a § 1983 action, just
26  like Leatherman, where the Court emphasized the importance of plaintiff not having counsel in assessing the pleadings
    before it.  This case does not in any way limit the *Bell Atlantic* standard, and indeed it cites to *Bell Atlantic.*

27  [4]  Plaintiffs' statement is actually a quotation from *Reyes v. Downey Sav. & Loan Assoc.*, 2008 WL 867722 (C.D. Cal.
    March 29, 2008), thus it is District Judge Guilford's interpretation of *Leatherman* that Plaintiffs rely on, not the
28  Supreme Court itself.

1  defendants have to wait to prevail on their immunity defenses, in this unrelated area of the law,

2  should not drive this court's analysis of Plaintiffs' inadequate pleading here.

3          In citing to *Leatherman,* Plaintiffs give the Court an example of a heightened pleading

4  standard: "factual detail and particularity [of] the basis for the claim which necessarily includes

5  why" a certain defense does not apply.  Plaintiffs repeatedly insist that Defendants have

6  misinterpreted *Bell Atlantic* to impose such a "heightened" pleading standard.  On the contrary,

7  Defendants have not argued that Plaintiffs are not required to meet a more demanding rule for their

8  claims than for pleading other kinds of claims.  Plaintiffs simply must provide facts demonstrating

9  **the grounds for the relief sought, beyond mere conclusions and a formulaic recitation of the**

10 **elements of a particular claim**.  *Bell Atlantic Corp., supra,* 127 S. Ct. at 1969.  Plaintiffs have

11 not met that standard.

12         Plaintiffs also repeatedly rely on the *Reyes v. Downey Sav. & Loan Assoc.* court's statement

13 that "detailed evidentiary facts are not required to be in the complaint, and there is no distinction

14 drawn between the pleading of facts, ultimate facts, or even conclusions of law." (Opp., 1:18-20,

15 8:20-9:2.)  The *Reyes* court cited to *Jackson v. Marion County,* 66 F.3d 151 (7th Cir. 1995) for this

16 proposition.  *Jackson*, is another § 1983 case, the third one that Plaintiffs have directed this Court

17 to, where the court held that because *Leatherman* was directly on-point, it mandated the adequacy

18 of the pro se plaintiff's pleaded conclusions.  *Id.* at 153.  Even so, the Seventh Circuit

19 acknowledged in *Jackso*n, that it had required more facts in another opinion, but stated that to

20 apply that "principle to the present case would be asking too much of a prisoner who is proceeding

21 without the assistance of a lawyer."  *Id.* at 154.

22         Moreover, throughout *Reyes*, the court relied upon *Conley v. Gibson*'s, 355 U.S. 41, 45-46

23 (1957), language that "a complaint should not be dismissed for failure to state a claim unless it

24 appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

25 would entitle him to relief."  *Id.* at *1, *5, *7.  The Supreme Court in *Bell Atlantic* explicitly

26 overruled that *Conley* language.  *Bell Atlantic, supra,* 127 S. Ct. at 1969 (the statement has "earned

27 its retirement" after "puzzling the profession for 50 years").  Thus, the *Reyes* decision is not on

28 point and neither relies upon nor reflects the modern standard.

-4-

1

**2.    The Ninth Circuit Has Fully Embraced *Bell Atlantic*.**

2    Despite Plaintiffs' contrary assertions, they also cite to the recent Ninth Circuit case of

3    *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (2008), which quotes *Bell*

4    *Atlantic's* requirement that the complaint must provide more than "a formulaic recitation of the

5    elements of a cause of action." In *Mendiondo*, the Ninth Circuit summarized the plaintiff's False

6    Claims Act retaliation Claim allegations. The facts asserted in support of the first element of her

7    claim demonstrate the pleading of a plaintiff with an actual basis for her claims.

8    > For purposes of the first element [fraud] . . . the complaint contains examples of
     > practices at CHMC that Mendiondo and her co-plaintiffs suspected to be

9    > fraudulent attempts to inflate Medicare reimbursements: one doctor allegedly
     > performed numerous unnecessary catheterizations; CHMC implanted single

10   > ventricular pacemakers, even when patients needed biventricular pacemakers; and
     > CHMC kept patients on observation status or as inpatients, without regard to

11   > medical need and in violation of Medicare reimbursement guidelines. Mendiondo
     > also alleges that CHMC obtained reimbursement for more radiologic and

12   > catheterization procedures than were actually performed by having billing
     > personnel manually change the billing records. Although far from a model of

13   > clarity, Mendiondo's allegations provide CHMC with notice of the potentially
     > fraudulent practices that Mendiondo believes led to false claims.

14   *Id.* at 1105 (internal citations omitted).

15   Plaintiffs also cite to *Williams v. Gerber Products Co.*, 2008 WL 1776522 at *1 (9th Cir.

16   April 21, 2008), for the proposition that all allegations of material fact are construed in the light

17   most favorable to the plaintiff.[5] *Williams* cites to *Bell Atlantic* in laying out the Ninth Circuit

18   pleading requirements. *Id.* at *3. Moreover, the concept of having <u>facts</u> construed in Plaintiffs'

19   favor presupposes that material facts supporting their allegations have been pled.

20   Despite the lengthy analysis presented by both sides, the bottom line is that *Bell Atlantic* is

21   the pleading standard. Despite their attempts to grasp onto insignificant or outdated precedent,

22   Plaintiffs know it and this Court should follow it. There is nothing unjust about insisting that

23   Plaintiffs' claims meet the required pleading standard.

24

25

26

27

---

28   [5] Both *Mendiondo* and *Williams* were decided by the Ninth Circuit after *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F. 3d 832, 839 (9th Cir. 2007), a case on which Plaintiff purports to rely.

**B.**  **The First Through Seventh Causes Of Action Cannot Be Maintained Against The Individual Defendants**

    **1.**  **Harper And Morgan Cannot Be Held Liable For ALC's Alleged Labor Code Violations**

Plaintiffs are suing Morgan and Harper under California Labor Code §1194, among other Labor Code violations. However, individual defendants are not subject to personal liability for a company's alleged violations of the California Labor Code. *Reynolds, supra*, 36 Cal. 4th at 1081-82.[6] Plaintiff thus attempt to establish a basis for individual liability against Morgan and Harper based on an alter ego theory. This attempt utterly fails.

    **2.**  **Plaintiffs Have Not Sufficiently Alleged An Alter Ego Theory**

Conclusory allegations of "alter ego" status are insufficient to state a claim. *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003) (a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each). In order to overcome the presumption of separateness afforded to related corporations, a party must plead specific facts supporting its claims and not just conclusory allegations. *Hokama v. E.F. Hutton & Co., Inc.*, 566 F. Supp. 636, 647 (C.D. Cal. 1983) ("plaintiffs cannot circumvent the requirements for secondary liability by blandly alleging that some defendants are 'alter egos' of other defendants accused of committing primary violations ... they must allege the elements of the doctrine. Conclusory allegations of alter ego are not sufficient").[7]

Plaintiffs cannot seriously contend that their pleadings reach the level of adequately pleading alter ego such that the claims against the Individual Defendants can be maintained on that theory. Plaintiffs' Complaint states merely "each of the Defendants ... are and were mere instrumentalities, shells, and alter egos of each other...." (Complaint ¶ 48.) Plaintiffs obviously are speculating about the individual defendants being alter egos— they have not even identified

---

[6] *Reynolds v. Bement's* impact and applicability was fully discussed in Defendants Motion To Dismiss Section B. 2.

[7] Recent California district court's to apply *Bell Atlantic's* pleading requirement to alter ego allegations include *Knudsen v. CHSI of Cal., LLC*, 2008 U.S. Dist. LEXIS 20586 (E.D. Cal. Mar. 14, 2008) (Plaintiff has failed to allege any facts supporting his "alter ego" claims against the three individually named Defendants. Rather, his conclusory allegations amount to little more than a "formulaic recitation of the elements.") and *Qwest Communs. Corp. v. Herakles, LLC*, 2008 U.S. Dist. LEXIS 22151 (E.D. Cal. Mar. 20, 2008) (Plaintiff's allegations of alter ego fall well short of the necessary mark to survive a motion to dismiss.). That case also presents a listing of adequate factual allegations that support an alter ego theory.

1   who is the alter ego of what. These alter ego allegations are exactly the type of pleading

2   disapproved in *Bell Atlantic* ("factual allegations must be enough to raise a right to relief above the

3   speculative level").

4       Moreover, simply listing the elements or buzz words of alter ego theory ("there exists such

5   a unity of interest and commonality of control, including commingling of funds, lack of adequate

6   capitalization, failure to maintain proper books and records, and additional omissions that there

7   truly is no separation or distinction among Defendants..." *id*) suggests only that Plaintiffs'

8   consulted a legal practice guide, and does not solve the inadequacy of not alleging any <u>facts</u> to

9   support the legal theory. The facts are simply not there to support their alter ego theory.

10  Defendants do not argue that Plaintiffs need to "detail and particularize [a] precise 'financial

11  arrangement'." (Opp., 14: 27-28.) They must, however, "provide the "grounds" of their

12  'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic

13  recitation of the elements."

14      Plaintiffs mischaracterize the *Bell Atlantic* decision when they quoted a partial statement in

15  their argument that they have done all that is required by pleading sufficient facts to give rise to a

16  "reasonably founded hope that the discovery process will reveal relevant evidence." (Opp., 8:13-

17  16.) The insufficiency of this assertion is clear when the whole statement is read:

18      Probably, then, it is only by taking care to require allegations that reach the level
    suggesting conspiracy that we can hope to avoid the potentially enormous expense

19      of discovery in cases with no " 'reasonably founded hope that the [discovery]
    process will reveal relevant evidence' " to support a § 1 claim.

20  *Id.* at 1967. Obviously the quote as presented by Plaintiffs is intentionally misleading.

21      Plaintiffs argue that they alleged facts in addition to what they concede are conclusions in

22  paragraph 48 of their Complaint. (Opp., 14:12-17.) They point to allegations that Morgan

23  founded American Laser Centers and was its President and CEO until 2007. (Complaint, ¶ 39.)

24  They label him ALC's "controlling force" and call him a "cult-like figure head" who "bullied,

25  intimidated, and dominated his subordinates into doing what he wanted" through regular

26  interactions with the management of ALC, which he referred to as his "henhouse." (*Id.*)

27  Similarly, Plaintiffs allege little more than Harper is a doctor who serves as the medical director

28

-7-

1  and that, at some unknown time and place, he "personally identified himself as the 'owner' of the

2  clinics." (*Id.* at ¶40.)  It is a complete mystery how Plaintiffs believe these statements show a

3  factual basis for an alter ego theory.[8]  None of these allegations go to the alter ego elements, let

4  alone support them.  No where in their 39-page Complaint did Plaintiffs bother to describe the

5  nature of the relationship or financial arrangements that give rise to alleged liability.

6        Finally, Plaintiffs reliance on *Smith v. Simmons*, 2008 WL 744709 (E.D. Cal. March 21,

7  2008), is not persuasive.  Not only did *Simmons* contain more factual allegations than the instant

8  case, it is materially distinct: Simmons was the <u>sole owner</u> of the defendant-company.  *Id.* at *10.

9        **C.**    **The Eighth, Ninth and Tenth Claims Should Be Dismissed Against The**
           **Individual Defendants Because They Were Inadequately Pled And Are Solely**
10          **Predicated On Claims That Cannot Be Brought Against Them**

11        Plaintiffs' Eighth, Ninth and Tenth claims for relief fail against the Individual Defendants.

12  By those claims, Plaintiffs are improperly seeking tort and/or equitable remedies based solely on

13  the allegations that Defendants violated various provisions of the Labor Code per their First

14  through Seventh claims for relief.

15        Plaintiffs' mischaracterize the *Reynolds* decision by arguing that it "allows personal

16  liability under established common law and statutory theories."  *Reynolds* does not set forth any

17  specific theory on which individual liability could be established, nor does it find such liability on

18  the facts of that case.  The decision merely suggests that there could be some circumstances where

19  personal liability could be upheld pursuant to established common law and statutory theories.  The

20  issue here is not whether such a legal possibility exists, but whether Plaintiffs have alleged any

21  facts under which claims for personal liability could be maintained against Harper or Morgan

22  under any established common law or statutory theory.  They plainly have not done so.

23        **1.**    **Plaintiffs' Allegations Against the Individual Defendants Are**
           **Insufficient to Maintain the Eighth, Ninth and Tenth Claims**
24
25        Plaintiffs have not alleged in any way that either of the Individual Defendants were

26  ─────────────
    [8] Two conditions must be met before the alter ego doctrine will be applied.  First, there must be such a unity of
27  interest and ownership between the corporation and its equitable owner that the separate personalities of the
    corporation and the shareholder do not exist in reality. *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523,
    538 (2000).  Second, there must be an inequitable result if the acts in question are treated as those of the corporation
28  alone. (*Id.*)

    DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'
    OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1  personally engaged in the conduct giving rise to Claims Eight, Nine, or Ten.  Plaintiffs generalized

2  allegations are pure speculation, and do not meet the pleading requirements of *Bell Atlantic,* under

3  which they are required to provide a "'showing,' rather than a blanket assertion, of entitlement to

4  relief," which necessitates "some factual allegation in the complaint."

5      Plaintiffs' instruction to this court to "make no mistake: Plaintiffs allege that Morgan and

6  Harper personally directed and participated in the conduct that comprises Plaintiffs' UCL,

7  conversion, and unjust enrichment claims" is no substitute for pleading the requisite facts.  (Opp.,

8  16:20-22.)  First, it is axiomatic that the facts necessary to support claims against the Defendants

9  should be present in the Complaint, not in papers submitted only after the pleadings are

10 challenged.  Second, they do not explain where in the Complaint such facts are supposedly found.

### a.    There Are No Allegations That Harper Or Morgan Converted Plaintiffs' Wages For Their Own Benefit

Plaintiffs' conversion allegations are clearly inadequate.  Plaintiffs are correct that under,

*Frances T. v. Village Green Owners Assn.,* (1986) 42 Cal. 3d 490, "corporate directors may be

jointly liable… and… joined as defendants if they personally directed or participated in the

tortious conduct."  The problem with Plaintiffs' argument is that their Complaint has no facts

setting forth personal wrongdoing by the Individual Defendants that supposedly resulted in a

conversion.  The court in *Reynolds* explained as much when dismissing tort allegations:

> [n]or has plaintiff alleged that the individual defendants here misappropriated to themselves, as individuals for their individual advantage, the unpaid wages he alleges his former employer owes him. He alleges, rather, that they "caused the wages to be withheld by and in the accounts of the corporate defendants for the Defendants' collective benefit." Under such circumstances, California courts have declined to allow actions such as the instant one to proceed.

*Reynolds, supra,* 36 Cal. 4th at 1090.  Where are the allegations that Morgan or Harper

"misappropriated to themselves, as individuals for their individual advantage, the unpaid wages"

that Plaintiffs allege ALC owes them?  Allegations that the Individual Defendants "caused the

wages to be withheld by and in the accounts of the corporate defendants for the Defendants'

collective benefit" are not even adequate, per *Reynolds,* and Plaintiffs here fall short of the

inadequate pleadings in *Reynolds.*

b.  ***Bradstreet v. Wong* Bars Plaintiffs Eighth And Tenth Claims Against The Individual Defendants**

Plaintiffs' UCL claim seeks only restitution.  Their Tenth Claim also seeks restitution. (Opp., 12:15-13:3.)  These claims are barred by *Bradstreet v. Wong*, 161 Cal.App.4th 1440 (2008).

While an owner or officer of a corporation may be individually liable under the UCL if he or she actively and directly participates in the unfair business practice, the remedy of restitution is not available against individual defendants unless they appropriated for themselves corporate funds that otherwise would have been plaintiffs' wages.  *Id.* at 1459-61.  The court in *Bradstreet* explained that the problem with requiring individual defendants, rather than the company, to pay unpaid wages is that the labor, which plaintiff performed was not for the individual defendants personally, but for the company.  *Id.* at 1460.  The court held that restitution claims against individual defendants are not allowed under *Reynolds v. Bement*, since the individual defendants did not personally obtain the benefit of those services, and the duty to pay wages was owed by the corporation as employers, not by defendants as owners, officers or managers.  *Id.*

Here, Plaintiffs are bringing the exact claim that was forbidden in *Bradstreet.*  Moreover, the same problem is presented with Plaintiffs Tenth Claim for "Unjust Enrichment."  Each claim tries to force the Individual Defendants to return to Plaintiffs something that they never had.  Thus, these claims are not restitutionary, as they would require Morgan and Harper to replace money that they never took from Plaintiffs.  Plaintiffs were paid by ALC, not by Morgan or Harper.

D.  **Plaintiffs' Eighth, Ninth And Tenth Causes Of Action Are Defective And Must Be Dismissed, Without Leave To Amend, As To All Defendants**

1.  **Plaintiffs' UCL Claim Seeks Improper Remedies**

a.  ***Murphy's* Reasoning Leads To The Conclusion That Plaintiffs Are Seeking Improper Damages**

Plaintiffs argue that the relief sought in their UCL claim (Eighth Claim) is appropriate because they are "seeking only restitution." (Opp., p.9.)  The dispute here, however, is whether Plaintiffs are entitled to seek restitution for the penalties and damages sought in their UCL claim.

Plaintiffs argue that, because *Murphy v. Kenneth Cole Productions, Inc.* ("*Murphy*"), 40 Cal.4th 1094 (2007) decided that premium pay for meal and rest break violations constitutes

1   wages, then those wages are recoverable under *Cortez v. Purolator Air Filtration Products Co.*

2   ("*Cortez*"), 23 Cal. 4th 163 (2000).  This argument misconstrues both *Murphy* and *Cortez*.

3   *Murphy* decided whether the premium pay penalty imposed under Labor Code § 226.7 was a

4   penalty **or** whether it constituted damages, in the nature of wages.  In other words, either the

5   payments were given to the plaintiff to compensate them for an injury deemed to have resulted

6   from the defendant's conduct (damages), or they were imposed on the defendant to punish it for a

7   wrong or injury suffered by the plaintiff (penalties).  Because the *Murphy* decision found that the

8   "premium wage" payments are not penalties, then, by definition, they are <u>damages</u>.

9          In concluding the "premium wage" remedy is consistent with a wage, the *Murphy* court

10  analogized Labor Code § 226.7 to state and federal wage and hour laws which also provide for

11  liquidated damages as remedies – which in and of itself should be sufficient to dispel the idea that

12  payments pursuant to § 226.7 can be equitable remedies.  *Murphy, supra,* at 1107, citing to Labor

13  Code §§ 226.3, 1197.1, and 230.8  Additionally, payments made pursuant to § 226.7 cannot be

14  restitutionary because they are not proportional to the loss.  *Murphy* explains that, regardless of the

15  specific amount of personal time lost as a result of the inability to take a rest or meal period, "the

16  Legislature has selected an amount of compensation it deems appropriate."  *Id.* at 1114.  The

17  compensation selected by the legislature was intended to address both the lost break or meal time

18  as well as the "noneconomic injuries employees suffer from being forced to work through rest and

19  meal periods."  *Murphy, supra,* at 1113.  *Murphy*'s own rationale, therefore, as well as its

20  description of the injuries being compensated, leads to the conclusion that premium wage

21  payments are damages as opposed to equitable or restitutionary in nature.  Accordingly, *Murphy*

22  undermines Plaintiffs' argument that premium wage payments, or the other damages for which

23  they claim to be seeking "restitution," are equitable and appropriately sought under the UCL.

24                      b.     **Plaintiffs Have No Restitution Interest In The Damages**
                               **They Seek In Their Eighth Cause Of Action**
25

26         Plaintiffs argue that, because payments for missed meal and rest periods under California

27  Labor Code §226.7 were considered wages by the *Murphy* court, they are recoverable under

28  *Cortez*.  They further argue that the alleged improperly deducted wages, unreimbursed expenses,

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1   vested vacation time and waiting time penalties "are similarly subject to restitution since they are

2   all in the nature of money either acquired by an unlawful practice or in which Plaintiffs have a

3   vested property interest." (Opp., p.10.)  Plaintiffs are doing nothing more than circularly arguing

4   that, because the damages they seek are comprised of money they are allegedly owed, the damages

5   must be restitutionary in nature.  This argument is flawed and has no basis in law.

6          In *Cortez*, the Supreme Court held that employees had a restitutionary interest in unpaid

7   overtime wages sufficient to allow them to recover such wages under the UCL.  However, *Cortez*

8   *only* applied to overtime wages and did not to hold that there was a similar restitutionary interest in

9   "premium pay" wages or the other expenses, reimbursements, etc. requested by Plaintiffs in the

10  Eighth cause of action.  Indeed, the cornerstone of *Cortez's* reasoning was its finding that overtime

11  premium pay fit within the definition of wages contained Labor Code § 200.  In contrast, *Murphy*

12  declined to hold that the additional hour of pay provided in Labor Code § 226.7 satisfied § 200's

13  definition of "wages."  In fact, in *Prachasaisoradej v. Ralphs Grocery Company, Inc.,* 42 Cal.4th

14  217 (2007), the California Supreme Court reaffirmed the principle that there is a restitution interest

15  in "wages" only to the extent the "wages" are earned through an employee's personal "work or

16  service," as opposed to various Labor Code provisions which provide for liquidated damages in

17  the guise of "premium wages."  The Court held "an employee's 'wages' or 'earnings' are the

18  amount the employer *has offered or promised to pay,* or *has paid pursuant to such an offer or*

19  *promise,* as compensation for that employee's labor."  *Prachasaisoradej, supra,* 42 Cal.4th 228.

20  Moreover, other Courts have specifically held that statutory penalties such as waiting time

21  penalties under Labor Code Section 203 cannot be recovered as restitution by way of a UCL claim.

22  *See, e.g. Montecino v. Spherion Corp.*, 427 F.Supp.2d 965 (C.D. Calif. 2006).

23         Plaintiffs' circular argument that there is a restitutionary interest in their premium pay

24  claims, or in any of the other remedies they seek in their UCL claim, is inconsistent with *Cortez*

25  and the other cases addressing the equitable remedies permitted under the UCL. *See Korea Supply*

26  *Co. v. Lockheed Martin Corp., supra,* 29 Cal.4th 1134, 1149 (2003).  The damages for which

27  Plaintiffs purport to seek "restitution" will not return them to the status quo, *i.e.* where "wages"

28  earned by an employee's *labor* are returned to the employee.  Rather, such payments seek to

1   compensate Plaintiffs for the direct and consequential injuries suffered because they were

2   allegedly denied workplace rights.  Query how Plaintiffs can claim that the "premium wage"

3   remedy is restitutionary when the payment exceeds the employee's actual wages.

4        As Plaintiffs' UCL claim is defective as pled, the Court should dismiss it or, alternatively,

5   strike those portions of the Complaint (at Paragraph 115) that improperly seek purported

6   "restitution" for damages under Labor Code Section 226.7 and for statutory waiting time penalties.

7   *See, e.g. Montecino v. Spherion Corp.*, *supra*, 427 F.Supp.2d at 968 (striking all references in UCL

8   claim to recovery of non-restitutionary payments or penalties under Labor Code Section 203).

9             **2.    Plaintiffs' Ninth Claim For Conversion Is Defective**

10       Although money may be the subject of a conversion claim, a specific, identifiable sum

11  must be alleged, and a plaintiff must identify a specific "fund" allegedly converted.  Plaintiffs do

12  not refute that the Complaint neglects to plead any *specific identifiable* sum at issue that was

13  supposedly converted by Defendants.  It is insufficient simply to calculate the amount of the loss.

14  Rather, the plaintiff must show that the "converted" funds were "held in escrow or in some

15  otherwise segregated fund for the benefit of [plaintiff]." *Software Design & Application, Ltd. v.*

16  *Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472, 485 (1996).[9]  Plaintiffs fail to assert that there ever

17  was such a "fund" specifically for their wages and those of the putative class members, such that

18  Defendants' could have "converted" for their own benefit those amounts set aside for Plaintiffs.

19       Despite Plaintiffs' assertion that Defendants can point to no precedent requiring dismissal

20  of their conversion claim because their damages are not known, the court in *Trustees of So CA*

21  *Pipe Trades v. Temecula Mech., Inc.* 438 F.Supp.2d 1156, 1171-1172 (C.D. Cal. 2006) (applying

22  California law), did just that.  *See also Software Design, supra,* 49 Cal. App. 4th at 475 (1996)

23  (affirming demurrer to conversion cause of action where money was allegedly misappropriated

24

---

25  [9] Conversion is the "'wrongful exercise of dominion over the plaintiff's ownership or right to possession of the *property*" of another.  *Farmers Ins. Exchange v. Zerin*, 53 Cal.App.4th 445, 451 (1997), quoting *Oakdale Village*
26  *Group v. Fong*, 43 Cal.App.4th 539, 543-44 (1996) (emphasis added).  Because the cause of action is intended to protect personal property rights, it generally cannot be used for the recovery of money, which is not a chattel for
27  conversion purposes. *Id.*  An exception has been acknowledged, however, where there is an identifiable fund of money held for the benefit of plaintiff.  *Software Design, supra,* 18 Cal.2d at 681; *see also Farmers Ins.*
28  *Exchange, supra* at 451. This is because the segregated fund is akin to an item of property.

1   "over time, in various sums, without any indication that it was held in trust for" plaintiff). After

2   noting that the complaint nowhere identified how much money defendants failed to remit for its

3   employees union dues and stating that this failure normally suffices for dismissing a conversion

4   claim, the court considered plaintiffs inability to obtain this information at the pleading stage. *Id.*

5   at 1172. Out of this consideration leave to amend was granted, but the claim was dismissed. *Id.*

6   Because Plaintiffs have not identified how much money Defendants allegedly converted, this

7   claim should be dismissed. If the Court is of the view Plaintiffs can correct this error, leave to

8   amend may be appropriate. However, the holding of *Trustees of So CA Pipe Trades*, makes clear

9   that the time to allege this sum is now.

10      Plaintiffs also misunderstand the argument, and the law, underlying the basic principle that

11   when a right has been created by statute and a statutory remedy for its infringement is provided,

12   the statutory remedy is exclusive and no other remedy is allowed. *Stevenson v. Superior Court,* 16

13   Cal.4th 880, 900 (1997), citing *Rojo v. Klinger,* 52 Cal.3d 65, 79 (1985). Plaintiffs argue that,

14   because the "tort of conversion did exist at common law, and predates the Labor Code" *Stevenson*

15   is inapplicable. Plaintiffs' argument, however, is based on a fallacy, i.e. that the rights under

16   which they are asserting their conversion claim emanate from the common law underlying

17   conversion. Obviously, this is incorrect. The Ninth claim is based <u>entirely</u> upon the alleged

18   violations asserted in their First through Seventh claims. In fact, Plaintiffs expressly state that

19   ALC's alleged obligations to pay their wages, expenses, and compensation were "imposed by

20   statutory law," *i.e.* the Labor Code. (Complaint at ¶ 118.) Put another way, before the enactment

21   of the Labor Code provisions at issue in this Complaint, Plaintiffs could not have maintained their

22   conversion claim, as no right to overtime pay, "premium wage" payments for missed meal and rest

23   breaks, or right to enforce the other purported Labor Code violations existed. Because the Labor

24   Code provisions at issue were enacted to create rights that could not have been asserted under the

25   common law tort of conversion, <u>the statutory remedies under the Labor Code are exclusive</u>.

26      **3.    Plaintiffs' Tenth Claim For Unjust Enrichment Is Defective**

27      Plaintiff's Tenth claim for "unjust enrichment" fails, regardless of how Plaintiffs style it.

28   Plaintiffs do not refute the fundamental principle that there is no right to equitable relief when

1    there is an adequate remedy at law. *Morrison v. Land,* 169 Cal. 590, 586 (1915). Plaintiffs'

2    failure to address this argument on the merits leaves Defendants' argument unopposed.

3        The case of *DSU Aviation, LLC v. PCMT Aviation, LLC,* 2007 WL 3456564 (N.D. Cal.

4    November 14, 2007), on which Plaintiffs rely, is inapplicable. There, the defendants argued that

5    the unjust enrichment cause of action should be dismissed because California law does not allow

6    recovery of unjust enrichment when a party pleads breach of an enforceable contract *Id.* at *2.

7    The court held that unjust enrichment is an action in quasi-contract and that it was a properly

8    pleaded alternative to their claim for breach of contract because it was far from clear that an

9    enforceable, binding agreement existed. *Id.* Plaintiffs here are not seeking unjust enrichment as

10   an alternative to any of their claims, and there is no need for them to do so. Rather, they are

11   seeking damages under specific Labor Code statutes and, despite the obvious presence of legal

12   remedies, they are concurrently seeking equitable relief. *DSU Aviation* does not permit this.

13       Finally, any right Plaintiffs have to overtime compensation, reimbursements, etc. are

14   statutory rights deriving solely from the Labor Code, not rights deriving from the law underlying

15   the equitable remedy of unjust enrichment. As explained above, when a right has been created by

16   statute and a statutory remedy for its infringement is provided, the statutory remedy is exclusive

17   and no other remedy is allowed. *Stevenson v. Superior Court, supra,* 16 Cal.4th at 900.

18   Concurrent common law and equitable claims for violations of specific Labor Code provisions

19   simply do not exist. *See. e.g., California Emergency Physicians Medical Group v. Pacificare,* 111

20   Cal.App.4th 1127, 1137-38 (2003).

21   **III.    CONCLUSION**

22       For all of the reasons set forth herein and in Defendants' Moving papers, Defendants

23   request that the Court grant their Motion to Dismiss without leave to amend.

24

25   Dated: May 23, 2008            THELEN REID BROWN RAYSMAN & STEINER LLP

26                                     By  /s/ Jennifer L. Goldberg

27                                         Attorneys for Defendants
                                           ALC-PARTNER, INC., RICHARD
28                                         MORGAN and DENNIS HARPER

1   Dated: May 22, 2008                SCHIFF HARDIN LLP

2                                      By _____

3                                         William J. Carroll
                                          Attorneys for Defendants
4                                         AMERICAN LASER CENTERS LLC and
                                          AMERICAN LASER CENTERS OF
5                                         CALIFORNIA LLC

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS